## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LORENZO GARCIA,

     Plaintiff,

v.                                                                    No.  1:24-cv-1286 KK/KRS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and RANDY CARNEY,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S FIRST AND SECOND MOTIONS TO COMPEL</u>

**THIS MATTER** is before the Court on Plaintiff Lorenzo Garcia's First and Second Motions To Compel Defendant State Farm's Written Discovery Responses (Docs. 30, 33). Having considered the parties' written submissions and relevant case law, the Court determines that the Motions should be granted in part as set forth more fully below.

## I.      Factual Background

This lawsuit arises out of an automobile insurance policy issued by Defendant State Farm Automobile Insurance Company ("State Farm"). The policy includes Uninsured/Underinsured Motorist (UM/UIM) coverage with a $600,000 policy limit. *See* (Doc. 3-2 at 3, ¶ 20). Garcia alleges he suffered significant injuries in an automobile collision that occurred on April 3, 2022, and thereafter submitted a claim to State Farm for UM/UIM benefits. (*Id.* at 3, ¶¶ 15-19, 21).[1] Garcia alleges that State Farm failed to pay him the full benefits owed under the insurance policy. (*Id.* at 3, ¶ 22). As a result, Garcia brought suit in state court against State Farm and State Farm's adjuster, Randy Carney, alleging claims for underinsured motorist benefits (Count I); violations of

---

[1] *See also* (Doc. 36 at 1 ("Following settlement with the drivers of other vehicles involved in the Accident, Plaintiff sought stacked underinsured motorist … benefits from State Farm, his auto insurer.")).

the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 § 57-12-1 *et seq.* (Count II); breach of contract and the duty of good faith and fair dealing (Count III); bad faith failure to pay a first-party claim (Count IV); and violations of the New Mexico Unfair Insurance Practices Act ("UIPA"), NMSA 1978 § 59A-16-20 (Count V).[2] Through these claims, Garcia seeks to recover compensatory damages under the policy; punitive damages; treble damages under the UPA; and/or damages allowed by Article 16 of the New Mexico Insurance Code. Garcia also seeks to recover attorney's fees, costs, and pre- and post-judgment interest. *See* (Doc. 3-2 at 10).

## II.    Procedural History

The complaint was filed in state court on October 23, 2024, and appears to have been served on State Farm on or about November 5, 2024. (Doc. 3-2 at 13); *but see* (Doc. 30 at 1). Defendants removed the state court complaint to this Court on December 20, 2024, alleging federal jurisdiction based on diversity of citizenship. (Doc. 3-1 at 1). A Scheduling Order was entered on March 12, 2025, which provided that discovery would be completed by September 5, 2025, and dispositive motions would be filed by October 6, 2025. (Doc. 24). Those dates were later extended to October 31, 2025, and December 12, 2025, respectively. (Doc. 52).

At the scheduling conference, the Court resolved the parties' disagreement over the number of written discovery requests allowed per side. While the case was pending in state court, Garcia had served State Farm with discovery requests consisting of thirty-eight Interrogatories, fifteen Requests for Admission, and forty-two Requests for Production. *See* (Doc. 19 at 10). At the scheduling conference, Garcia asked the Court to allow fifty requests in each category per side,

---

[2] Garcia recently filed a motion for leave to file an amended complaint. (Doc. 65). The proposed amended complaint includes the same causes of action alleged in the currently operative state court complaint, seeking only to add factual allegations concerning State Farm's conduct during this litigation. The motion is opposed by State Farm and is not yet fully briefed.

while State Farm sought to limit discovery to twenty-five requests in each category per side. The Court struck a compromise of thirty requests in each category per side, and directed Garcia to pare down his previously served discovery requests accordingly. *See* (Doc. 22). Garcia did so, serving State Farm with his revised discovery requests (hereinafter "Plaintiff's First Set of Discovery Requests") on March 14, 2025. *See* (Doc. 26).

State Farm responded to Plaintiff's First Set of Discovery Requests (hereinafter "State Farm's Discovery Responses") on April 17, 2025. *See* (Doc. 29); (Doc. 30-1). On April 22, 2025, Garcia's counsel sent State Farm's counsel a letter noting concerns he had with State Farm's Discovery Responses. (Doc. 30-2). State Farm's counsel responded on April 29, 2025 by requesting that the parties meet and confer over their discovery disagreements. Garcia's counsel and State Farm's counsel met by telephone on May 5, 2025, at which time they resolved some of the discovery issues noted in Garcia's discovery letter. (Doc. 30 at 2). Based on his understanding from the telephone call and subsequent correspondence that State Farm was unwilling to withdraw its objections or supplement some of its responses, Garcia filed the First Motion to Compel on May 8, 2025.[3] The First Motion to Compel seeks an order compelling responses to Interrogatories 19-21, 26 (partially), and 29, and Requests for Production 6-8, 15-17, 20-21, and 24-26.

Garcia states that he did not raise other potential concerns with State Farm's Discovery Responses in the First Motion to Compel because State Farm had "indicated in discovery responses or correspondence regarding Plaintiff's Good Faith letter, that [its] production of related or responsive documentation [was] forthcoming." (Doc. 30 at 2 n.2).[4] On May 19, 2025, State Farm

---

[3] The subsequent correspondence apparently consisted of an email following the May 5, 2025 telephone call in which Garcia's counsel stated, "[c]orrect me if I am wrong," but "I understand your client stands on its objections for the Following ROGS: 19, 20, 21, 26 (for others not Randall Carney), and 29," as well as its "objections for RFPs 6, 7, 8, 15, 16, 17, 20, 21, 24, 25, and 26." (Doc. 33 at 2).

[4] Garcia cites the May 5, 2025 email, *see* note 3, *supra*, which, after soliciting confirmation from State Farm's counsel regarding the discovery requests for which State Farm was standing on its objections, then continued: "From what I

served Garcia with its "First Supplemental Responses" (Doc. 33-2). Believing that the supplemental responses did not correct the deficiencies in State Farm's original responses, Garcia then filed the Second Motion to Compel. (Doc. 33). The Second Motion to Compel seeks an order compelling discovery regarding Interrogatories 13, 23, and 24, and Requests for Production 4, 5, 22, 23, 27, 28, and 29.

On May 27, 2025, the parties filed a joint motion for entry of a stipulated confidentiality order. On May 30, 2025, State Farm filed its response in opposition to Garcia's First Motion to Compel. (Doc. 36). On June 2, 2025, the Court entered the parties' agreed confidentiality order. On June 12, 2025, Garcia filed a reply brief in support of his First Motion to Compel. (Doc. 41). On June 13, 2025, State Farm filed its response in opposition to Garcia's Second Motion to Compel. (Doc. 43). On June 24, 2025, Garcia filed his reply brief in support of his Second Motion to Compel. (Doc. 46). The Court conducted a settlement conference on September 16, 2025, but the case did not settle. (Doc. 56). Accordingly, Garcia's First and Second Motions to Compel are ripe for ruling.

### III.      Legal Standard

Federal Rule of Civil Procedure 33 permits a party to serve interrogatories on any other party regarding "any matter that may be inquired into under Rule 26(b)." FED. R. CIV. P. 33(a)(2). Likewise, Federal Rule of Civil Procedure 34 permits a party to serve on any other party requests to produce documents and electronically stored information "within the scope of Rule 26(b)." FED. R. CIV. P. 34(a)(1). The scope of Rule 26(b) is as follows: "Unless otherwise limited by court order, … [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any

---

understand, … you will supplement (or focus down to the last 5 years) with your supplements by May 19 for the remainder of the discovery …." (Doc. 33 at 2). According to Garcia, "Defendant never confirmed or denied what would be supplemented, instead responding on May 19 with its first supplemental responsive set." (*Id.* at 2 n. 1).

party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." FED. R. EVID. 401. Discovery is proportional to the needs of the case based upon an evaluation of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

Generally speaking, the scope of discovery in Federal Rule of Civil Procedure 26 is broad. Broad discovery empowers parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947*); see Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch.,* No. CIV. 02-1146 JB/LFG, 2007 WL 1306593, at *3 (D.N.M. Mar. 12, 2007) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." (quoting *Hickman*)). In turn, trial becomes "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Rozier v. Ford Motor Co*., 573 F.2d 1332, 1346 (5th Cir. 1978) (quoting *United States v. Proctor & Gamble Co*., 356 U.S. 677, 683 (1958)). "At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman*, 329 U.S. at 507). The Court is "not … required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *Soseeah v. Sentry Ins*., No. CV 12-1091 RB/ACT, 2013 WL 11327129, at *1 (D.N.M. Nov. 4, 2013) (internal quotation marks omitted) (quoting *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. 2002)).

Rule 37 provides the mechanism to compel discovery from a person or party who "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents ... as requested under Rule 34." FED. R. CIV. P.37(a)(3)(B)(iii), (iv). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc*., 270 F.R.D. 298, 302 (S.D. Ohio 2010) (internal quotation marks and citation omitted); *see Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) ("when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request").[5] When the moving party meets that initial burden, or "[w]hen the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Moses*, 236 F.R.D. at 671.[6] Ultimately, the Court "is afforded broad discretion in the resolution of non-dispositive discovery disputes," and its determination of whether to compel discovery will be

---

[5] In addition, the party moving to compel discovery must certify that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). It appears that Garcia has met this prerequisite in the case sub judice. *See* (Doc. 30 at 1-2; Doc. 30-2; Doc. 33 at 1-2).

[6] *See also In Spite Telecom LLC v. Rosciti Constr. Co. LLC*, 747 F. Supp. 3d 270, 277 (D. Mass. 2024) (the moving party on a motion to compel "bears the burden … of showing the requested information is relevant. … If [the moving party] satisfies this burden, the [opposing party] bears the burden of showing that [the] discovery request is improper.") (internal quotation marks and citations omitted); *Soseeah*, 2013 WL 11327129, at *1 ("The burden is on the objecting party to show why an interrogatory is improper." (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FED. PRACTICE & PROC. § 2173, at 291–92)); *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D. Kan. 2010) (the objecting party is required to "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"); *Shaffer v. Nw. Mut. Life Ins. Co*., No. CIV.A. 5:05-CV-1, 2007 WL 38853, at *3 (N.D.W. Va. Jan. 5, 2007) ("The party opposing a motion to compel bears the burden of showing why it should not be granted.").

"overrule[d] only if this discretion is clearly abused." *Alsaadi v. Saulsbury Indus., Inc.*, No. 2:23-CV-291 KG/KRS, 2024 WL 1617639, at *2 (D.N.M. Apr. 15, 2024).

## IV.    Discussion

### A.    Preliminary Issues

The Court addresses two preliminary issues before discussing the specific discovery requests that are the subject of Plaintiff's Motions to Compel.

#### 1.    State Farm's Argument That Plaintiff Is Applying The Wrong Discovery Standard

State Farm argues that Plaintiff's First and Second Motions to Compel should be denied because "plaintiff applies an old discovery standard which ha[s] been superseded by [amendments to] the Federal Rules of Civil Procedure." (Doc. 36 at 1); *see also* (*id.* at 3) ("In making his legal argument, Plaintiff does not adhere to these newer discovery standards; rather, he focuses on the old, broader discovery standards."); Doc. 43 at 3-4 (similar). The Court disagrees.

Plaintiff's Motions cite the correct legal standard for discovery as set forth in the Legal Standard section of this opinion. *See* (Doc. 30 at 2-3; Doc. 33 at 3). According to State Farm, the 2015 amendments to Rule 16(b)(1) [sic] narrowed discovery's substantive scope … to ensure that discovery was proportional to the needs of the case, deleting the definition of relevance as including information or material that is reasonably calculated to lead to the discovery of admissible evidence, … a standard Plaintiff repeatedly relies on in his Motion to Compel." (Doc. 36 at 3 (citing *Landry v. Swire Oilfield Servs., L.L.C.,* 323 F.R.D. 360, 379 (D.N.M. 2018)). But *Landry* does not support State Farm's argument. To the contrary, *Landry* demonstrates that State Farm is the one actually applying the wrong standard.

To fully understand the 2015 amendments and State Farm's argument, the Court begins with the pre-2000 language of Rule 26(b)(1). Before 2000, the sentence in Rule 26(b)(1) on which

State Farm's argument is based read: "The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Landry,* 323 F.R.D. at 376. The 2000 amendments changed that sentence to read: "Relevant information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "The advisory committee's notes make clear [this change] was a housekeeping amendment to clarify that inadmissible evidence must still be relevant to be discoverable." *Id.*[7]

The 2015 amendments deleted the language "if discovery appears reasonably calculated to lead to the discovery of admissible evidence" altogether. The post 2015 and current version of Rule 26(b)(1) now reads simply: "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* at 379. As *Landry* explains, the 2015 amendment's deletion of the "reasonably calculated to lead to" language "did not necessarily change discovery's scope, but clarified it." *Id.* at 380. Specifically, as the Committee Note to the 2000 amendments had observed, the phrase "reasonably calculated to lead to the discovery of admissible evidence" had "been used by some, incorrectly, to define the scope of discovery." *Id.* at 379 (quoting FED. R. CIV. P. 26 advisory committee's note to 2015 amendment). Despite the 2000 amendment's attempt to correct that misapplication by adding the word "Relevant" at the beginning of the

---

[7] As District Judge Browning explained further in a deep-dive discussion of the 2000 and 2015 amendments to Rule 26(b)(1):

> As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence.

*Landry,* 323 F.R.D. at 377-78.

sentence, the Committee found that the "reasonably calculated" phrase had "continued to create problems." *Id.* Therefore, the 2015 amendments removed the problematic language and replaced it with "the direct statement that 'Information within this scope of discovery need not be admissible in evidence to be discoverable.'" *Id.* at 380 (quoting FED. R. CIV. P. 26 advisory committee's note to 2015 amendment).

Notably, "[d]iscovery of nonprivileged information not admissible in evidence *remains available* so long as it is otherwise within the scope of discovery." *Id.* (emphasis added) (internal quotation marks omitted). In other words, despite the 2015 changes—made for the purpose of clarifying and correcting past misuse of the deleted language—"[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Id.* at 380 (internal quotation marks omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-9792, 2015 WL 7871037, at *2 (S.D.N.Y. 2015) (quoting *Oppenheimer Fund, Inc.*, 437 U.S. at 351))). In short, Plaintiff was not wrong in referencing the "reasonably could lead to" language, although confusion generated by that language probably warrants its avoidance.[8]

That confusion is apparent here in that State Farm criticizes Plaintiff for citing the deleted language, and then itself defaults to that very same language. *See, e.g.,* (Doc. 36 at 4 (asserting that Plaintiff's discovery requests are inappropriate because they are "not reasonably calculated to lead to the discovery of admissible evidence")). Not only that, but State Farm also fails to recognize that the 2015 deletion did not change the basic principle that information does *not* have to be admissible in order to be subject to discovery. *See Landry,* 323 F.R.D. at 380 ("Discovery of

---

[8] As District Judge Browning observed, "[a]rguably, older lawyers will have to learn a new vocabulary and ignore the one they have used for decades. If the changes were not made to change the scope of discovery, it is unclear what the benefit of all this really is." *Landry*, 323 F.R.D. at 379 n.15.

nonprivileged information not admissible in evidence *remains available* so long as it is otherwise within the scope of discovery." (emphasis added)); *see also id.* at 378 (inadmissible evidence is discoverable so long as it is "relevant," and, "[a]s used here, 'relevant' means within the scope of discovery as defined in this subdivision").[9]

State Farm also refers to the "two-tiered discovery process" implemented by the 2000 amendments to Rule 26(b)(1), whereby "if a party objects that discovery goes beyond what is relevant to the claims or defenses asserted, the court must become involved to determine whether the discovery is relevant, and, if not, whether good cause nonetheless exists for authorizing it." (Doc. 36 at 2-3 (citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009))). But the language creating the two-tiered system was deleted by the 2015 amendments and replaced with the proportionality requirement. *See Landry*, 323 F.R.D. at 379. State Farm mentions the proportionality requirement in its response briefs, but does not specifically address any of the factors outlined in Rule 26(b)(1) for its application.[10] While the overall goal of the 2000 and 2015 amendments was to involve the court more "in the process of regulating—mostly limiting— discovery on relevance grounds alone," *id.* at 378, Rule 26(b)(1) no longer provides for a formal, two-tier system for defining the scope of discovery.

---

[9] *Accord Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 326 (10th Cir. 1981) (stating that "relevancy is construed more broadly during discovery than at trial"); *Dorato v. Smith*, 163 F Supp. 3d 837, 865–66 (D.N.M. 2015) ("relevancy in discovery is broader than that required for admissibility at trial," although "the object of inquiry must have some evidentiary value to be discoverable"); *Soseeah*, 2013 WL 11327129, at *2 ("Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the 'object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.'" (quoting *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. 1998))).

[10] Plaintiff, on the other hand, does directly address the proportionality factors, arguing that: (1) "the issues are important (bad faith insurance practices, violations of the unfair and trade practices frauds acts, respectively, and punitive damages)"; (2) "the amount in controversy is substantial (up to $600,000 in stacked UIM coverage plus punitive damages and additional bad faith and unfair practices damages in the 7 figures)"; (3) "State Farm has superior access to its internal information"; (4) "the requested discovery is essential to proving Plaintiff's claims"; and "[t]he discovery sought is minimal compared to the issues at stake." (Doc. 41 at 2; Doc. 46 at 2).

Without directly discussing the issue, State Farm alludes to the primary change in the scope of discovery wrought by the 2000 amendment—the substitution of the words "claim or defense" for the words "subject matter." *See id.* at 376-77. This change was meant to "narrow the substantive scope of discovery in the first sentence," by "'focus[ing] on the actual claims and defenses involved in the action.'" *Id.* at 376, 377 (quoting FED. R. CIV. P. 26(b)(1) advisory committee's note to 2000 amendment); *see In re Cooper Tire & Rubber Co.*, 568 F.3d at 1192 ("The 2000 amendments effected a change in the scope of what is relevant for purposes of discovery. However, this change is limited …. [I]t changed only the answer to the question of 'relevant to what?'…. [I]t did not change the definition of the word 'relevance' itself for purposes of discovery but it did change what we are looking to in deciding what is relevant."). Here, Plaintiff's argument is that his discovery requests are relevant specifically to the claims he alleges in the complaint, as opposed to the subject matter of the lawsuit more generally. State Farm may disagree, but its disagreement on the relevance of the information sought to Plaintiff's claims does not mean that Plaintiff is applying the wrong standard.

### 2.    State Farm's Timeliness Argument As To The Second Motion to Compel

State Farm argues that the Court should summarily deny the Second Motion to Compel as to all but two of the discovery requests at issue in that motion because the motion was not filed within twenty-one days of April 17, 2025, the date State Farm's Discovery Responses were served on Plaintiff.[11] The Second Motion to Compel was filed within twenty-one days of State Farm serving its Supplemental Responses, but those responses only provided supplementation as to

---

[11] *See* D.N.M. LR-Civ. 26.6 ("A party served with objections to … [discovery requests] must proceed under D.N.M. LR-Civ. 37.1 within twenty-one (21) days of service of an objection unless the response specifies that documents will be produced or inspection allowed. In this case, the party must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days after production or inspection of the documents.").

Interrogatories 23 and 24. Therefore, State Farm argues, Plaintiff should have moved to compel the remaining discovery requests addressed in the Second Motion to Compel when he filed the First Motion to Compel. *See* (Doc. 43 at 2-3).

The Court finds State Farm's arguments to be disingenuous at best. State Farm led Plaintiff to believe that supplementation was forthcoming on all of the discovery requests covered by the Second Motion to Compel. Following the parties' good faith conferral by telephone, Plaintiff's counsel requested in writing that State Farm's counsel confirm Plaintiff's counsel's understanding from the good-faith conferral phone call that State Farm intended to supplement *all* of the discovery requests covered by the Second Motion to Compel (which were specifically listed in the email). Plaintiff's counsel relied on State Farm's counsel's silence in the face of that request for confirmation by waiting to seek a court order compelling further responses to the discovery requests at issue. The Court believes it was reasonable for Plaintiff's counsel to assume that State Farm's counsel did in fact intend to supplement those responses, since that was what was apparently discussed during the telephone call. State Farm's tactic of not responding to a simple request for confirmation, and then not supplementing as Plaintiff advised State Farm that he understood State Farm intended to do, without advising Plaintiff that it did *not* so intend, and then arguing that Plaintiff's motion to compel the un-supplemented requests is untimely, smacks of gamesmanship.[12]

---

[12] State Farm argues that Plaintiff's understanding that State Farm would supplement its responses to the discovery requests in question was "unilateral," and therefore insufficient to justify his failure to act within the original twenty-one-day deadline. It was not "unilateral," however, when Plaintiff's counsel communicated his understanding to State Farm's counsel, and State Farm's counsel said nothing. Under that scenario, State Farm's counsel knowingly allowed Plaintiff's counsel to believe that State Farm's counsel intended to do something she apparently had no intention of doing. Having participated in the meet-and-confer and received Plaintiff's written confirmation of their agreement, State Farm had an obligation to respond if it disagreed with Plaintiff's understanding. *See Bettis v. Hall*, 852 F. Supp. 2d 1325, 1340 (D. Kan. 2012) (a party may be equitably estopped if its acts or remains silent (when it has a duty to speak), thereby inducing another party to believe certain facts existed, and the other party rightfully relies and acts upon such belief and would now be prejudiced if the party who induced the reliance were permitted to deny the existence of such facts). State Farm misleadingly suggests that Plaintiff's understanding was based solely on the fact

The Court finds that Plaintiff satisfied the timing requirements of Local Rule 26.6 by filing the Second Motion to Compel within twenty-one days of State Farm's First Supplemental Responses, regardless of the fact that the First Supplemental Responses did not in fact supplement State Farm's original Discovery Responses as to some of the discovery requests that are the subject of Plaintiff's Second Motion to Compel. The case cited by State Farm— *Escano v. RCI, LLC*, No. CV 2:22-360 DHU/GJF, 2024 WL 68530 (D.N.M. Jan. 5, 2024)—supports this finding. *Id.* at *4 ("Nothing in Plaintiff's response to the Motion to Quash demonstrates that he proceeded with his Third Motion to Compel within 21 days of service of Defendants' objections or within 21 days of Defendants' *promise* of production of documents or discovery responses. (emphasis added)).

*Escano* is also distinguishable because the plaintiff in that case filed his motion to compel after the scheduling order deadline for discovery motions had expired, thereby causing Rule 16(b)(4)'s good cause requirement for modification of a scheduling order to come into play. *Id.* at *1. Here, the Scheduling Order deadline for motions related to discovery has not yet expired, *see* (Doc. 52 (extending the discovery motion deadline to November 14, 2025)), so only Local Rule 26.6's deadline for discovery motions is at stake. And while the Local Rule, like Rule 16(b)(4),

---

that "State Farm 'made no effort to indicate it would not supplement'" (Doc. 43 at 5). It wasn't just State Farm's silence that led to Plaintiff's understanding; it was State Farm's silence *in the face of* an affirmative statement from Plaintiff's counsel about what his understanding of what State Farm had said it would do during the parties' good-faith discussion. The Court expects counsel to act in good faith at all times, but in particular they should act in good faith when engaging in good faith discussions pursuant to Rule 37(a)(1). Nowhere does State Farm deny that its counsel verbally committed to Plaintiff's counsel to supplement the discovery requests at issue. Nor does State Farm deny that its counsel received the email replicated in Plaintiff's motion in which Plaintiff's counsel sought to confirm his understanding of the results of the parties' Rule 37(a)(1) conference. State Farm also does not represent that its counsel responded to Plaintiff's counsel's email, or that she ever made any effort to correct Plaintiff's counsel's understanding of her verbal commitment, as stated in that email. Finally, State Farm cannot deny that it remained silent even in the face of Plaintiff's statements in his First Motion to Compel regarding State Farm's discovery responses that were *not* brought to the Court's attention in that motion due to State Farm representing that it intended to supplement those responses (as discussed earlier). Because State Farm made no effort to document its response to Plaintiff's Rule 37(a) good faith letter in writing, the Court credits Plaintiff's representation that, as a result of their good faith discussions, State Farm verbally agreed to supplement the discovery requests at issue. The Court deems State Farm's later silence to Plaintiff's email documenting that verbal agreement to be confirmation of that agreement.

includes a "good cause" provision for extending the discovery motions deadline, the Local Rule allows the Court to *sua sponte* extend the deadline for good cause. State Farm argues an extension of the deadline for good cause must be issued before the deadline expired, or else the excusable neglect standard of Rule 6(b)(1) comes into play. But Rule 6(b)(1) only applies to an act that must be done within a specified time by a party. *See* FED. R. CIV. P. 6(b)(1)(B). State Farm cites no authority for applying the excusable neglect standard to a *sua sponte* act by the Court, which is authorized under the Local Rules without reference to any particular timeline. *See Escano*, 2024 WL 68530, at *2 (stating that when *a party* moves for an extension of the Rule 26.6 deadline after that deadline has passed, *the party* must show both good cause and excusable neglect).[13]

Finally, and in any event, D.N.M. LR-Civ. 1.7 provides that "[t]hese rules may be waived by a Judge to avoid injustice." The Court finds that even if the twenty-one-day deadline in Local Rule 26.6 applied under the present circumstances, it should be waived for the reason that Plaintiff was lulled into believing the discovery requests would be supplemented and waited for that supplementation to file his motion to compel. He then acted promptly once he understood there would be no supplementation for the discovery requests at issue. Accordingly, to avoid an injustice, the Court waives the twenty-one-day Local Rule deadline for Plaintiff's Second Motion to Compel.

---

[13] The Court also notes that the court in *Escano* did not reject the pro se plaintiff's argument that defendant had "strung" [him] along with promises to produce documents which never materialize[d]" as being insufficient as a matter of law to show either good cause or excusable neglect. Rather, the court merely found that the plaintiff's arguments were "undeveloped," and that they "str[uc]k the Court as accusations aimed at the underlying discovery disputes and not at showing good cause for the untimely filing of Plaintiff's Third Motion to Compel." *Escano*, 2024 WL 68530, at *2. The Court cannot say what particular facts were before the *Escano* court that led to that court's conclusions about the plaintiff's accusations of discovery misconduct against the defendants, because the *Escano* court did not provide any further discussion of the subject. But this Court can say that the facts before it do *not* strike this Court in the same manner, and that those facts likely are sufficient for a finding of both good cause and excusable neglect, if such findings were necessary.

**B.      The Disputed Discovery Requests**

For the most part, State Farm's arguments against the disputed discovery requests focus on the issue of relevance to Plaintiff's claims, with conclusory statements sprinkled here and there about discovery being overbroad and unduly burdensome. In general, the Court finds that the disputed discovery requests are facially relevant to Plaintiff's claims, and therefore Plaintiff has met his initial burden of proof. Accordingly, the Court's primary task is to determine whether, for each of the disputed discovery requests, State Farm has met its burden of refuting Plaintiff's relevance arguments and/or establishing a proportionality argument for disallowing the discovery.

**1.      Other Complaints or Lawsuits (Interrogatories 19 and 20; Request for Production 26)**

The first category of disputed discovery requests seek information about complaints made to the New Mexico Department of Insurance in the past five years based on State Farm's handling of personal injury claims, as well as similar lawsuits against State Farm in New Mexico in the last ten years alleging bad faith, unfair claims practices, unfair trade practices, or violation of the New Mexico Trade Practices and Fraud Act.[14] State Farm's Discovery Responses objected to the discovery requests in question as vague, ambiguous, overly broad, and "potentially unduly burdensome." (Doc. 30-1 at 22). State Farm also objected on the ground that the discovery "seeks

---

[14] *See Plaintiff's Interrogatory 19* ("Identify all complaints made to the New Mexico Department of Insurance based on your handling of personal injury claims handled by your company within the last five (5) years, providing the claimant, claim number, insured, and the vehicle at issue (make, model and year)."); *Plaintiff's Interrogatory 20* ("Please state whether Defendant has been a party to other lawsuits alleging common law Insurance Bad Faith, Unfair Claims Practices, Unfair Trade  Practices, or Violation of the Trades Practices and Fraud Act in the State of New Mexico or for common law or statutory violations involving wrongful failure to settle, delay of payments, failure to investigate, or any other extra-contractual claims-handling matter for the past ten years. If Defendant has been a party to such actions, please set forth for each and every such action the cause number, the names of all parties of record, their attorneys, the theory of the cause of action, the basis for the claim, the outcome, the amount of damages (compensatory and/or punitive) paid, a description of the claims at issue, and any settlement arising therefrom."); *Plaintiff's Request For Production 26* ("Produce all judge or jury verdicts finding Defendant State Farm Mutual Automobile Insurance Company acted in Bad Faith or violated the Trade Practices and Frauds Act of the Insurance Code from 2015 to Present Date.").

information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," because "[t]he existence of any complaints pertaining to other, unrelated claims/matters will neither prove nor disprove any claims and/or defenses at issue in this litigation," and that the information sought "unduly invades the privacy rights of policyholders who are not parties to this lawsuit." *Id.*

Generally speaking, boilerplate objections, which include "explanation-less 'undue burden' objections," and similar objections that lack specificity, are insufficient "because they conceal from opposing counsel and the court the actual problem with [the] request." *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 447 (D. Utah 2020).[15] Moreover, "objections asserted in a party's initial response to discovery requests but not reasserted in response to a motion to compel are waived and deemed abandoned." *DIRECTV v. Puccinelli*, 224 F.R.D. 677, 681 n.8 (D. Kan. 2004) (citing cases). Accordingly, going forward, the Court will only discuss State Farm's objections raised in its responses to the Motions to Compel.

State Farm asserts—boldly, given the absence of any substantive discussion of the actual claims in the case—that "[t]here is no argument here that other bad faith claims have any relevance to the claim asserted against State Farm in this lawsuit." (Doc. 36 at 4). State Farm's use of the "claim" in the singular—obviously referring to Plaintiff's denial of insurance benefits/breach of contract claim—is telling. State Farm would like the Court to only consider "the value dispute as to how much UIM coverage is owed to Plaintiff." (*Id.* at 6). Doing so, however, ignores Plaintiff's UPA, bad faith, and UIPA claims in Counts II, IV, and V of the complaint. Numerous courts have

---

[15] *See also Heuskin v. D&E Transp., LLC*, No. CV 19-957 MV/GBW, 2020 WL 1450575, at *2 (D.N.M. Mar. 25, 2020) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (internal quotation marks and citations omitted)); *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004) ("This Court looks with disfavor on conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." (internal quotation marks and citation omitted)).

found that evidence of other similar bad-faith claims is relevant to such claims, by, for example, showing a defendant's "alleged 'bad state of mind.' More specifically, … [a]n insurer that has handled similar claims in the past which ended in bad-faith litigation would be more likely to have knowledge of the likely consequences of its conduct. Likewise, evidence that an insurer acted with similar bad faith in the past would tend to show its deliberateness or willfulness in handling the [plaintiff's] claim." *Bryant v. Colonial Surety Co.*, No. 1:23-cv-00298-BLW, 2015 WL 672314, at *3 (D. Idaho Feb. 17, 2015).[16]

State Farm asserts that "there are no allegations of a broad business practice or pattern of wrongly denying insurance claims" in the case. (Doc. 36 at 4). But that assertion is incorrect. For

---

[16] *See also Rapid City/BH Lodging, LLC v. AmGUARD Ins. Co.*, No. 4:23-CV-04053-RAL, 2024 WL 1937858, at *3 (D.S.D. May 2, 2024) (noting that "this district has ... routinely compelled discovery of prior lawsuits for bad faith and extracontractual claims," and that "[r]egulatory actions and consumer complaints are [also] relevant when there is a bad-faith claim alleged" (internal quotation marks and citations omitted)); *Sentry Select Ins. Co. v. Quaid Harley Davidson, Inc*., Case No. EDCV 20-2145-JWH (KKx), 2022 WL 1694438, at *4 (C.D. Cal. Jan. 7, 2022) (other complaints alleging bad faith, tortious breach of the implied covenant of good faith and fair dealing, and/or any similar claim are "relevant to punitive damages and common law 'bad faith' claims" (internal quotation marks and citation omitted) (citing other cases)); *Jardine v. Metro. Life Ins. Co*., No. CV 1:20-00091-JB-N, 2021 WL 6012706, at *2 (S.D. Ala. May 7, 2021) ("In bad faith denial of insurance cases, courts have consistently granted discovery requests for claims that have led to other bad faith denial lawsuits."), *order clarified*, No. CV 1:20-00091-JB-N, 2021 WL 6012677 (S.D. Ala. Sept. 28, 2021); *Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, Civil No. 15-00245 ACK-KSC, 2017 WL 80248, at * 6 (D. Hawaii Jan. 9, 2017) (finding that the defendant's handling of other similar insurance claims and lawsuits in Hawaii was relevant to the plaintiff's bad faith claim); *Sheppard v. Direct Gen. Ins. Co*., Case No. 3:16-cv-11418, 2017 WL 5998756, at *2 (S.D.W. Va. Dec. 4, 2017) (finding that information regarding other bad faith claims, litigation, informal complaints, and grievances was relevant to the plaintiff's claim that the defendant wrongfully refused to interpret the insurance policy to provide coverage); *Barela v. Safeco Ins. Co. of Am.,* No. 13-1084 SMV/SCY, 2014 WL 11497826, at *9 (D.N.M. Aug. 22, 2014) ("the Court finds that the information Plaintiff seeks regarding prior bad faith claims against Defendant is relevant to her claims"); *Cudd Pressure Control, Inc. v. New Hampshire Ins. Co*., 297 F.R.D. 495, 503 (W.D. Okla. 2014) (ordering discovery of complaints with the Oklahoma Insurance Department and lawsuits filed against the defendants in Oklahoma concerning same type of policy within past 5 years); *Kirschenman v. Auto-Owners Ins.,* 280 F.R.D. 474, 489 (D.S.D. Feb. 21, 2012) ("Whether Auto–Owners has engaged in conduct with other insureds that is similar to the conduct they are alleged to have engaged in with plaintiffs in this case is relevant."); *CMH Homes, Inc. v. United States Fidelity & Guar., Co.*, No. 3:05-cv-552, 2008 WL 11342899, at *2 (E.D. Tenn. Aug. 28, 2008) (finding that other bad faith lawsuits or complaints were relevant to the plaintiff's claim of bad faith and/or the applicability of the Tennessee Consumer Protection Act); *Pinnacle Entertainment, Inc. v. Allianz Global Risks US Ins. Co*, No. 2:06-cv-00935-BES-PAL, 2008 WL 11388715, at *2 (D. Nev. Jan. 29, 2008) (finding that where the complaint alleges the insurer has engaged in bad faith in its claims handling, claims adjustment, and payment of the insured's losses, evidence concerning how the insurer has handled, adjusted, and paid other hurricane claims, and whether the insurer has taken consistent or inconsistent coverage positions in other hurricane losses involving the same or similar policy provisions, is relevant and discoverable).

instance, Plaintiff alleges in Count II that State Farm "*knowingly* or as *a general business practice*," engaged in a number of unfair trade practices," such as "[m]isrepresenting that good or services have characteristics or benefits that they do not" and "[o]ffering goods or services with the intent not to supply them in the quantity requested by the prospective buyer." (Doc. 3-2 at 5, ¶ 32 (emphasis added)).[17] Moreover, Plaintiff's UPA and bad faith claims allege intentional conduct, as well as a malicious or dishonest state of mind.[18] Even courts that restrict discovery of other complaints and lawsuits in cases alleging bad faith denial of an insurance claim acknowledge the relevancy of such discovery. *See, e.g., Stephens v. State Farm Fire & Cas*. Co., No. 1:14-CV-160, 2015 WL 1638516, at *5 (M.D. Pa. Apr. 13, 2015) ("[I]t is clear that in some instances examples of similar, wrongful conduct in the processing other insurance claims may permit an inference that there is a pattern or practice of misconduct on a defendant's part.").

However, courts are also cognizant that "dissimilar conduct involving disparate claims" would not be relevant. *Id.* The trick is to tailor the discovery so that it targets only similar conduct and like claims. *See, e.g., Jardine,* 2021 WL 6012706, at *2 ("Jardine is entitled to an answer on Interrogatory Nos. 10 and 14, but only for denials of claims (1) in Alabama, (2) from the date of Jardine's alleged claim denial to five-years prior, (3) that have resulted in the filing of a bad faith denial lawsuit."); *Horvath v. Globe Life & Accident Ins. Co.*, Case No. 3:18-cv-84, 2019 WL

---

[17] *See also* (Doc. 41 at 4-5 ("Plaintiff is not alleging that State Farm merely took a reasonable legal position, but instead that it could have only reached its improper conclusion based on a pattern and practice of failing to properly assess claims based on internal policies and procedures. Plaintiff's claims are not just those of a one-off mistake, but instead a continuing process to undervalue and fail to pay out claims.")).

[18] *See, e.g.,* (Doc. 3-2 at 7 ¶¶ 50-51 (alleging that State Farm acted in bad faith by "refus[ing] to pay Plaintiff's automobile insurance claims under the terms of the Policy and cit[ing] unfounded and frivolous reasons for the denial"); *id.* at 8, ¶¶ 54, 55 (alleging that State Farm "acted wantonly, willfully, maliciously, dishonestly, or recklessly in, among other things, "[c]ompelling insureds to institute litigation to recover what they are due," "[a]ttempting to settle claims for less than the amount a reasonable person would have believed they were entitled to"; and "[p]utting its own interests above the interests of its insureds and failing to investigate their claim properly")).

975172, at *4 (W.D. Pa. Feb. 28, 2019) (citing inter alia *Santer v. Teachers Ins. & Annuity Ass'n*, Civil Action No. 06-CV-1863, 2008 WL 755774, at *2, *9-10 (E.D. Pa. Mar. 19, 2008) (explaining that "[l]imiting discovery to the practices applied to the individual plaintiff is the preferable approach" and only allowing discovery of other insurance claims to the extent that those claims involved particular bad faith practices that were allegedly applied to the plaintiff)).

Rather than engage in good faith negotiations with that end in mind, State Farm takes the absolute and indefensible approach of denying any potential relevance of Plaintiff's discovery requests, at times simply ignoring Counts II, IV, and V of the complaint, and at other times suggesting discovery related to those claims is inappropriate because "these are no more than broad theories and Plaintiff fails to specify how State Farm committed these violations." (Doc. 36 at 5). In support of its "broad theories" argument, State Farm cites *Ammons v. Sentry Ins. Co*, 431 F. Supp. 3d 1280, 303-04 (D.N.M. 2019), which held that "an insurance company does not commit bad faith by taking a reasonable legal position that a court later rejects," and *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P.2d 649 (1985), which reversed a punitive damages award because there were legitimate questions regarding damages such that the insurance company's failure to pay was not unfounded and therefore not in bad faith. But those citations put the cart before the horse. The issue here is whether Plaintiff is entitled to discovery seeking information that would support his claims, not whether he may ultimately be successful or unsuccessful in the pursuit of his claims.[19]

---

[19] *See, e.g., Capture Eleven, LLC v. Otter Prods., LLC*, No. 20-CV-02551-RM-KLM, 2021 WL 12298517, at *5 (D. Colo. May 11, 2021) (stating that "merits-based argument[s] … normally should not preclude the discovery of relevant evidence" (citing *Boardwalk Aparts,, LLC v. State Auto Prop. and Cas. Ins. Co*., No. 11-2714-JAR, 2013 WL 1411768, at *2 (D. Kan. Apr. 8, 2013) (stating that "Defendant's arguments concerning the merits of plaintiff's claims are misguided and inappropriate in the context of a motion to compel"))); *Nunnery v. Sun Life Fin. Distributors, Inc*., 526 F. Supp. 2d 862, 870 (N.D. Ill. 2007) (stating that merits-based arguments were "manifestly premature" when the issue before the court was whether the plaintiff was entitled to the discovery he seeks).

State Farm also cites *Koch v. Koch Industries, Inc.*, 2013 F.3d 1202 (10th Cir. 2000), in support of its assertion that "[t]he mere fact that a plaintiff offers a broad theory of the case does not justify equally broad discovery." (Doc. 36 at 4). But that case is inapposite. The district court precluded the plaintiffs from pursuing fraud claims based on the broadly stated allegations of the complaint because those allegations failed to comply with Rule 9(b)'s pleading requirements, and the magistrate judge then denied the plaintiff discovery based on the plaintiffs' broadly stated theory of the case which had been rejected by the district court. *Id.* at 1237. On appeal, the Tenth Circuit upheld those rulings, stating that, "[w]hen a plaintiff first pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process." *Id.* at 1238. Here, there has been no challenge to the adequacy of the allegations in Plaintiff's complaint of bad faith, unfair trade practices, and/or unfair insurance practices. The Court declines to entertain an indirect challenge to those allegations through an argument directed at Plaintiff's discovery requests.[20]

State Farm fails to meet its burden of establishing that discovery of any information related to other claims is irrelevant. Federal Rule of Evidence 404(b)'s general prohibition on the consideration of other incidents to prove liability contains several well-established exceptions, including the possibility of proving intent or the absence of a mistake. FED. R. EVID. 404(b)(2). Further, evidence of other claims is often relevant in bad faith denial suits because, under New

---

[20] The Court also notes that in a later case in which the party resisting discovery made a similar argument based on *Koch*, the Tenth Circuit stated that it "agree[d] that the mere fact that a plaintiff entertains a 'broad theory of the case' does not justify more expansive discovery," but then qualified that statement by saying "unless the discovery is relevant to the plaintiff's actual claims or defenses." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1193. The court went on to observe that, "[u]nlike in *Koch*," the claims at issue in the case before the court were "not pure speculation." *Id.* Here too State Farm has not demonstrated that Plaintiff's claims in Counts II, IV, and V are pure speculation, and therefore State Farm's reliance on *Koch* is misplaced.

Mexico law, these suits require probing into the mindset of the insurer.[21] The UPA calls for enhanced penalties if willful conduct is shown. *See Apodaca v. Young Am. Ins. Co.*, 702 F. Supp. 3d 1094, 1124 & n.8 (D.N.M. 2023) (the UPA "increases the maximum penalty according to scienter[.]"). And "[w]illful conduct is the intentional doing of an act with knowledge that harm may result[.]" *Id.* In addition, Plaintiff's UIPA and punitive damages claims raise the issue of whether State Farm acted with a culpable mental state.[22]

In its sole attempt to directly engage with case law on point to the issue of whether to allow discovery of other complaints or lawsuits in a case alleging bad faith denial of an insurance claim, State Farm cites *Grove v. State Farm Fire & Cas. Co.*, Case No. 13-cv-754-JED-FHM, 2014 WL 11636148 (N.D. Okla. Sept. 23, 2014). In *Grove,* the court denied the plaintiffs' motion to compel discovery of other complaints and lawsuits because the plaintiffs had "speculated in only the most general terms that information concerning complaints about claims handling might be helpful to their case," and because the plaintiffs' motion to compel such information came "too late in the case for the court to require Defendant to be put to the burden of producing wide ranging information of such questionable relevance." *Id.* at *1. The *Grove* court did not delve too far into the relevancy question, perhaps because of the timing issue. If there is a timing issue here, however, it is not the result of Plaintiff waiting until late in the case to file his motion to compel, but of State

---

[21] *See, e.g., Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010) (bad faith claim must be supported by evidence tending to show that the insurer's actions were based on a "dishonest judgment" and that it "failed to honestly and fairly balance its own interests" with that of the insured).

[22] *See, e.g., Fuel Depot, LLC v. Travelers Cas. Ins. Co. of Am.*, 668 F. Supp. 3d 1212, 1221 (D.N.M. 2023) (to avoid liability under the UIPA, insurer "must reasonably believe [the insurance claim] to be without merit or overvalued," and so long as it "objectively exercises good faith" it will not be found liable); *Bhasker v. Kemper Cas. Ins. Co.,* 361 F. Supp. 3d 1045, 1135 (D.N.M. 2019) ("To be liable for punitive damages, … the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level."); *see also Apodaca,* 702 F. Supp. 3d at 1128 ("The Supreme Court of New Mexico has defined 'reckless disregard' sufficient for an award of punitive damages as 'when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm.'" (citation omitted)).

Farm responding to Plaintiff's requests for discovery regarding other complaints and lawsuits with a blanket denial of relevancy rather than engaging in good faith negotiations to narrow the scope of the requests.

Seeking to negotiate a middle ground notwithstanding State Farm's lack of participation in such negotiations, Plaintiff has offered to limit the subject matter scope of these discovery requests to automobile insurance policy cases, and to limit the time scope to five years, which, in his reply brief on the First Motion to Compel, he offered to reduce further to four years. (Doc. 41 at 5). In addition, Plaintiff notes in his reply brief that the *Grove* court ultimately ordered the defendant to produce a list of similar lawsuits, finding that "the same level of burden and questionable relevance does not apply to the production of a list of lawsuits." *Grove*, 2014 WL 11636148, at *2 ("Providing a list of similar lawsuits should not be an undue burden on Defendant and the information may lead to the discovery of admissible evidence."). Plaintiff states that he "would accept such a solution." (Doc. 41 at 3). Plaintiff's reply also confirms his offer to further limit his request to similar complaints and lawsuits in New Mexico involving UIM claims under automobile insurance policies in the last four years. (*Id.*).

The Court agrees with Plaintiff that a list of similar complaints and lawsuits limited as stated in his reply brief is a reasonable resolution of the issue at this time.

> The burden of producing this information is minimal compared to the importance of these issues in a bad faith case seeking punitive damages. State Farm is in the best position to identify relevant complaints and lawsuits, and a confidentiality order protects any legitimate privacy concerns. While some court records may be publicly available, State Farm's internal tracking of complaints and lawsuits, along with case-specific details about claim values and outcomes, is not accessible to Plaintiff and would require extensive courthouse searches across multiple jurisdictions.

(*Id*. at 5).

The Court rejects State Farm's conclusory assertion of undue burden. "Unless the task of producing or answering is unusual, undue[,] or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden. The party opposing discovery cannot simply refuse to answer based on a boilerplate proportionality objection; it must provide facts demonstrating how the request is disproportionate." *Rapid City/BH Lodging, LLC*, 2024 WL 1937858, at *3. State Farm cites no facts to demonstrate how Plaintiff's requests are unduly burdensome or otherwise disproportionate to the needs of the case. The Court finds that Plaintiff's self-imposed limitations as to geography, time-period, and types of policies and claims, sufficiently address any overly broad and unduly burdensome concerns State Farm might make (even if Sate Farm had provided factual support for those asserted concerns, which it did not).

State Farm's only other argument is that, under New Mexico law, a party is not required to produce a document, such as a list of lawsuits, unless it already exists. *See* (Doc. 36 at 6 (citing *Honeycutt v. Farmers Ins. Co. of Ariz.*, No. 07-cv-184-JH-RLP, 2008 WL 11333932, * 4 (D.N.M. Feb. 21, 2008) ("Fed. R. Civ. P. 34 does not require a party to create responsive documents if they do not exist in the first instance.")). That objection is meritless. The Court is ordering State Farm to respond to Plaintiff's Interrogatories 19 and 20 with a list of similar complaints and lawsuits, not to produce a list in response to any document production request. *See Barela*, 2014 WL 11497826, at * 9 (a New Mexico case *cited by State Farm*) (ordering the defendant to provide a list of complaints filed with the New Mexico Department of Insurance against the defendant that allege bad faith based upon the defendant's mishandling of first party uninsured/underinsured motorist claims,  as well as a list of civil complaints filed against the defendant in any court of law in the State of New Mexico alleging bad faith based upon the defendant's mishandling of first party uninsured/ underinsured motorist claims, both for a three-year period).

In sum, the discovery requests, as limited by Plaintiff in his reply brief appear relevant on their face—and may lead to the discovery of admissible evidence regarding the scope and the nature of investigation, if any, that State Farm undertook prior to rejecting Plaintiff's UIM/UM claim. State Farm, as the party resisting the discovery, has failed to show how the requested information would not be relevant or that the discovery is unduly burdensome. As State Farm has failed to satisfy its burden in resisting the requested discovery, the Court will grant the First Motion to Compel as to Interrogatories 19 and 20. State Farm shall serve amended responses to Interrogatories 19 and 20 within twenty-one (21) days of the date of entry of this memorandum opinion and order. The Court reserves ruling on Request For Production 26. Should Plaintiff seek production of any documents following his review of the list of complaints and other lawsuits provided by State Farm in response to Interrogatories 19 and 20, he should engage in good faith discussions with State Farm over that production. If Plaintiff later seeks documents but the parties are unable to reach agreement on that production, they should request Court involvement by emailing Chambers to ask that the Court schedule an informal discovery conference to address the issue.

### 2. Income Earned From Sale of Automobile Insurance Policies (Interrogatory 21; Request for Production 25)

The next group of discovery requests in dispute seek information concerning the annual income State Farm receives through its sale of automobile insurance in New Mexico for the last five years.[23] Plaintiff argues that this information is discoverable because the complaint seeks to

---

[23] *See Interrogatory 21* ("Please state the annual amount of income received by Defendant earned through the sale of automobile insurance policies in the State of New Mexico during the past five years with a statement of gross and net income (as calculated in reference to an income reporting system of accounting required by the Federal Internal Revenue Service)."); *Request for Production 25* ("Produce all records that indicate the accurate gross and net earnings for State Farm automobile policies in New Mexico, per year, from January 1, 2015 through the present, for the following categories: a. Gross and net earnings generally; b. Gross and net earnings related to UM/UIM premiums;

recover punitive damages. State Farm argues that "[t]o discover a party's financial condition in the context of a claim for punitive damages, a plaintiff must first show that the claim for punitive damages is not spurious." (Doc. 36 at 7 (quoting *Gudelj v. Vitality Works, Inc.*, No. CV 19-14 KG/JFR, 2019 WL 13302546, at \*6-7 (D.N.M. Oct. 16, 2019), *decision clarified on reconsideration*, No. CV 19-14 KG/JFR, 2019 WL 13302545 (D.N.M. Dec. 12, 2019))).

It is unclear why State Farm quotes the "spurious" language in *Gudelj* as it does not make any attempt to argue that Plaintiff's punitive damages claim is "spurious."[24] Instead, also citing *Gudelj*, State Farm goes on to argue that Plaintiff must "show that the financial information sought is not available elsewhere to be entitled to it." (*Id.*)*.* But *Gudelj* states that "[t]here is a public policy against the unnecessary disclosure of *income tax returns*," and therefore "several courts have …. require[d] … a compelling need for the tax returns, because the information is not otherwise readily obtainable." *Gudelj*, 2019 WL 13302545, at \*4 n.6 (emphasis added) (internal quotation marks and citation omitted). The discovery requests at issue here do not mention tax returns. *See* note 23, *supra; see also* (Doc. 41 at 6 n.2 ("Plaintiff has not requested tax returns.")). Moreover, the publicly available financial information State Farm points to provides only "a general overview of its net worth, financial health, and performance." (Doc. 36 at 7). Although State Farm argues that Plaintiff "has demonstrated no need for financial information beyond" its general net worth (*id.*), the Court is unconvinced.

---

c. Gross and net earnings related to liability premiums. d. Financial statements related to NM automobile insurance coverage sales.").

[24] *See* (Doc. 41 at 5-6 (arguing that the "not spurious" threshold is "easily met here, given Plaintiff's allegations of bad faith claim handling, citing *Sloan v. State Farm Mut. Auto Ins. Co.*, 2004-NMSC-004,¶ 23, 135 N.M. 106, 114, 85 P.3d 230, 238 ("we conclude that in most cases, the plaintiff's theory of bad faith, if proven, will logically also support punitive damages."))).

This Court has held that the varied approaches to discovery of a defendant's financial information where punitive damages are at issue is best explained "by the broad discretion federal courts enjoy to balance competing interests." *Philmar Dairy, LLC v. Armstrong Farms,* No. 218CV00530SMVKRS, 2019 WL 2006181, at *1 (D.N.M. May 7, 2019). This Court struck the balance in *Philmar Dairy, LLC* "in favor of immediate disclosure" because the plaintiffs in that case had "plausibly alleged an entitlement to punitive damages." *Id.* The Court is not convinced in the context of this case that Plaintiff is required to demonstrate a special "need" for the information beyond his showing of relevance, particularly given that the information will be produced subject to the confidentiality order that is in place. State Farm's reliance on the *Gudelj* decision is misplaced as that case involved discrimination claims for which only the company's net worth was necessary for purposes of the plaintiff's punitive damages claim, whereas here financial information connected specifically to State Farm's sale of automobile insurance policies, and beyond that, earnings related to UM/UIM premiums among other things, is likely relevant. And State Farm's cited public information, is general corporate data, not New Mexico-specific data. (Doc. 41 at 6).

State Farm, as the party resisting the discovery, has failed to show how the requested information would not be relevant or that the discovery is unduly burdensome. Accordingly, the Court will grant the First Motion to Compel as to Interrogatory 21 and Request for Production 25, as limited by Plaintiff in his reply brief to a two-year period. (*Id.*). State Farm shall serve amended responses to Interrogatory 21 and Request for Production 25, and produce any responsive documents, within twenty-one (21) days of the date of entry of this memorandum opinion and order.

### 3.    Licenses Held By Claims Adjusters (Interrogatory 26)

The parties next dispute whether Plaintiff is entitled to discovery concerning the licensure of adjusters who worked on Plaintiff's claim, other than Defendant Carney (for whom discovery has already been produced[25]). Plaintiff seeks the dates of the adjusters' licenses, the states in which the licenses were issued, and any adverse actions against those licenses.[26] According to Plaintiff, the requested information is evidence of the competency and qualification of the adjusters who handled Plaintiff's claim, which is relevant to Plaintiff's bad faith claim and the reasonableness of State Farm's claim handling. (Doc. 41 at 6). Plaintiff also argues that any licensing violations or disciplinary actions are relevant to the adjuster's bias and credibility. (*Id.*). Plaintiff argues that "[i]f Defendant can produce responsive information about one person who handled the claim, it is unclear why [it] could not do so for others involved with claim handling, including supervisors." (Doc. 30 at 5).

State Farm asserts that "licensing status does not bear on the merits of Plaintiff's claim." (Doc. 36 at 8). That argument is belied, however, by the fact that State Farm provided the requested licensing information for Defendant Carney. State Farm argues that, "[j]ust like proper licensing status does not mean an adjuster acted in good faith, improper licensing status does not mean an adjuster acted in bad faith." (*Id.* at 9). But that argument goes to the probative value of the evidence, not whether it is relevant and thus subject to discovery. Since State Farm has essentially conceded relevancy by having produced Carney's licensing information, the issue is whether a similar

---

[25] State Farm provided this information for Defendant Carney in its First Supplemental Responses (Doc. 36 at 8), but not for Carney's superiors or others who worked on Plaintiff's claim.

[26] *See Interrogatory 26* ("Please identify all licenses for adjusting claims held by Randall Carney, and any other adjuster(s) that participated in the adjusting, evaluating, decision making, and investigation of Plaintiff's claim, including listing the dates held, and listing the states in which each license was held. Please indicate whether any licenses for adjusting held by any of these individuals were ever suspended or revoked; for each revocation or suspension please identify the date of the same, and the circumstances surrounding the revocation or suspension.").

request for other adjusters who worked on Plaintiff's claim and supervisors is unduly burdensome and not proportional to the needs of the case.

State Farm has not provided any factual information to support a claim of burdensomeness, nor has it addressed the factors a court must consider in applying the proportionality standard. Because State Farm has failed to show how the requested information would not be relevant or that the discovery is unduly burdensome and not proportional to the needs of the case, the Court will grant the First Motion to Compel as to Interrogatory 26.[27] State Farm shall serve an amended response to Interrogatory 26 within twenty-one (21) days of the date of entry of this memorandum opinion and order.

### 4. Sales Incentive Programs (Interrogatory 29; Requests for Production 7, 8, 20, and 21)

Plaintiff seeks all information regarding any incentive program directed to adjusters/agents concerning the sale, loss, and experience of UM/UIM for the five years preceding the accident at issue and continuing to the present.[28] Plaintiff argues that "[t]his discovery is central to Plaintiff's bias theory" (Doc. 41 at 7), and that "[u]nderstanding whether Defendant Carney, his colleagues, or supervisors were incentivized to turn down or deny claims for their own compensation reveals

---

[27] The Court would be prepared to limit Interrogatory 26 to adjusters who contributed to or approved State Farm's decision to deny Plaintiff's UM/UIM claim (as opposed to anyone who may have touched the file) if State Farm had put forth even a modicum of effort to address the factors pertinent to the Court's decision. But State Farm has offered no details concerning the identity or numbers of the claims adjusters who would fall under Interrogatory 26 as written, and, without that information, the Court is not in a position to impose any restrictions on the scope of the information sought by Interrogatory 26.

[28] *See Interrogatory 29* ("Please identify all information related to programs and incentives directed to agents in any way related to the sale, and/or loss experience, of UM/UIM coverage in New Mexico for the five (5) years preceding the April 3, 2022, incident and continuing to the present."); *Request for Production 7* ("Produce a complete copy State Farm's Management Incentive Plan (MIP) for each year from 2015 to present date."); *Request for Production 8* ("Produce a complete copy of Senior Management Incentive Plan Performance Standards for each year from 2015 to present date."); *Request for Production 20* ("A copy of any documents showing any incentive, profit sharing or bonus plans based on claims handling or the reduction of claims payments."); *Request for Production 21* ("A copy of any documents showing any incentive, profit sharing or bonus plans based on claims handling or the reduction of claims payments.").

an external bias that directly impacts this case." (Doc. 30 at 5-6 (citing *VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, No. CIV. A. 98-2138-KHV, 1999 WL 386949, at *9 (D. Kan. June 8, 1999))).

State Farm relies on *Parker v. Baker Hughes Inc. Long Term Disability Plan*, No. 17-cv-372-WJ-GBW, 2018 WL 2926165 (D.N.M. June 11, 2018), for its relevancy argument, citing that court's conclusion that "the potential conflict when an insurer both pays and evaluates a claim for benefits … is less important, 'perhaps to the vanishing point,' to discovery financial information where steps were taken to reduce potential bias." (Doc. 36 at 9 (quoting *Parker*, 2018 WL 2926165, at *7 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)))). But the principles applied in the *Parker* decision are fairly specific to ERISA litigation.[29] And even if *Parker* could be applied to cases that do not involve the same standards, the court's decision was premised on specific information provided by the ERISA administrator demonstrating that it had "taken active steps to reduce potential bias and to promote accuracy by 'wall[ing] off' claims administrators from the finance department." *Parker*, 2018 WL 2926165, at *7-8.

Here, State Farm attempts to shift the insurer's burden of demonstrating structural safeguards against bias to the insured having the burden of demonstrating lack of structural safeguards before discovery is warranted. That is, in *Parker,* the ERISA administrator represented to the court that certain structural safeguards were in place. But here, State Farm merely asserts that "there is no evidence" of any structural bias.[30] Plaintiff does not have to prove there is

---

[29] For instance, when a plan administrator denies benefits, judicial review of that denial is generally limited to the administrative record and is based on an abuse of discretion standard, even if a conflict of interest potentially affects the administrator's decision. *See Parker*, 2018 WL 2926165, at *1.

[30] *See* (Doc. 36 at 10 (asserting that "there  is no evidence  that claim decisions were made based on anything other than information in the claims file"; that "there is no evidence that State Farm's financial operations were comingled with the New Mexico office where the claims decision [ ] was made"; that "there is no evidence that any of the adjusters involved [ ] reported to State Farm's finance employees'"; that "there is no evidence that State Farm's finance

structural bias in order to discover information relevant to whether there is bias. Indeed, State Farm's assertion that "each claim is handled on its own merits" begs for Plaintiff to be allowed discovery to test that conclusory proclamation. *See, e.g., Cudd Pressure Control, Inc.*, 297 F.R.D. at 502 (regarding the insurer's argument "as to the alleged lack of a correlation between the compensation of individual employees and the denial of claims," the court states: "Plaintiff is clearly not required to take Defendants' word for it"); *Kirschenman*, 280 F.R.D. at 485 (stating that the insurer's representation "to the court that its efforts to become more profitable are directed exclusively at increasing sales and premiums and not at all with controlling the cost of handling or paying claims …. is contrary to common sense and the evidence that has been adduced in any number of bad faith cases litigated in the state and federal courts of South Dakota.").

The Court finds that the information at issue is relevant to Plaintiff's claims. *See Sims v. State Farm Mut. Auto. Ins. Co.,* No 4:13CV00371 JLH, 2014 WL 12650652, at *3 (E.D. Ark. Apr. 30, 2014) ("Compensation information is relevant to bad-faith claims, because it may reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling." (internal quotation marks and citations omitted)); *VNA Plus, Inc.,* 1999 WL 386949, at *9 (ordering production of employee financial incentive programs as they "may provide evidence that employees of defendants had [] bias"). The Court also finds that State Farm has not met its burden of rebutting Plaintiff's showing of relevance. Nor has it presented any factual basis for the Court to find that the information sought is overbroad, unduly burdensome, or not proportional to the needs of the case. *See Kirschenman*, 280 F.R.D. at 485 ("The court reiterates that, once plaintiffs

---

employees participated in claims decision-making"; and  that "there is no evidence that any of the adjusters here received financial benefits based on the value or the number of the claims they denied")).

have established the threshold relevance of the discovery they are requesting, the burden shifts to [the insurer] to make a specific showing of facts from which the court could conclude that the discovery truly is not relevant, or that the relevance is marginal and outweighed by the expense, burden or embarrassment of providing the discovery."). However, the Court does find that the requested discovery as written is somewhat overbroad. Plaintiff states in his reply brief that he will limit the discovery requests at issue to incentive programs affecting UIM claim handlers from 2017 to present. The Court will go slightly further and limit the requests to incentive programs affecting UIM claim handlers for the five-year period of 2020 to 2025 (four years prior and one year after the filing of this lawsuit). State Farm shall serve an amended response to Interrogatory 29 and Requests for Production 7, 8, 20, and 21 as limited herein, and produce any responsive documents, within twenty-one (21) days of the date of entry of this memorandum opinion and order.

### 5. Personnel Files (Request for Production 6)

In Request for Production 6, Plaintiff seeks a complete copy of the personnel file for every person who participated in the adjusting or handling of Plaintiff's claim.[31] State Farm's Discovery Responses inadvertently omitted any response to this discovery request. *See* (Doc. 30-1 at 40). Plaintiff called State Farm's attention to the omission in his good-faith conferral letter. (Doc. 30-2 at 4-5). State Farm finally provided a written response to Request for Production 6 in its First Supplemental Responses, which consisted of four pages of legal argument with extensive citation to case authority. (Doc. 33-2 at 46-50). State Farm asserts in its response brief to the First Motion to Compel that it "incorporate[s] [the legal argument in its First Supplemental Responses] herein by reference." (Doc. 36 at 11).

---

[31] *See Request for Production 6* ("Produce a complete copy of the personnel file for every adjuster, employee or agent who participated in the adjusting, handling or investigation of Plaintiff's claim, including incentive, corrective actions, reprimands, salaries and bonuses.").

Plaintiff argues that State Farm waived its objections to producing the personnel files in question, not only because it left the response to Request for Production 6 blank in its original Discovery Responses, but also because it failed to immediately correct the omission by providing a response after Plaintiff called attention to the omission in his good-faith conferral letter. *See* (Doc. 21 at 2-3). State Farm was aware of the omission as early as April 22, 2025, the date of the good-faith conferral letter, but waited until May 19, 2025, when it served its First Supplemental Responses, to inform Plaintiff that it would not be producing any documents responsive to the request based on objections and legal arguments set out in the First Supplemental Responses.

State Farm should have acted immediately to set forth its objections to Request for Production 6 upon first learning of its mistake in not responding to the request in its original Discovery Responses served on April 17, 2025. Had it done so, the Court would agree with State Farm that its inadvertent omission of any objections to the request in the original response should not result in a waiver of those objections.[32] But the Court is troubled by State Farm's failure to correct the omission until May 19, 2025, more than a month later, despite having knowledge of the omission for most of that time period. In addition, as Plaintiff also points out, State Farm's belated objections to Request for Production 6 rely on *Barela*, 2014 WL 11497826, at *10, which in fact does allow limited production of personnel files. In other words, State Farm "is claiming that only certain information is accessible" under the standards on which it relies, yet "makes no effort to offer to produce such information." (Doc. 41 at 3). That approach is similar to State Farm's response on other discovery requests as well (e.g., in response to Plaintiff's request for similar

---

[32] *See Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661 (D. Colo. 2000) ("a failure to object to requests for production of documents within the time permitted by the federal rules has been held to constitute a waiver of any objection"); *see also Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) ("Having said that a waiver may result does not mean that it must, as a court has broad discretion to decide on a case by case basis whether waiver is appropriate.").

complaints and lawsuits, State Farm cited a case that allowed limited discovery, *Grove,* 2014 WL 11636148, but then raised a meritless argument for why it should not have to provide even that limited discovery here). Added to the above are the underwhelming arguments State Farm raises in its response briefs to Plaintiff's two Motions to Compel, including making only conclusory assertions of undue burden with no factual support. The Court is left with the impression of a severely lackadaisical approach to discovery.[33]

In any event, the Court need not rely on waiver because the Court finds State Farm's objections to be without merit. First, State Farm has not rebutted the relevancy to Plaintiff's claims of the information sought by Request for Production 6.[34] Second, State Farm has presented no evidence of, or even argued, undue burden or lack of proportionality in general. However, the Court will also limit the production to adjusters or their supervisors who were involved in handling Plaintiff's claim or supervised those who were involved. *See Sims,* 2014 WL 12650652, at *5. The Court also will require that sensitive personal or medical information in the personnel files in question be redacted or excluded from the production. *See Barela*, 2014 WL 11497826, at *10; *AKH Co.*, 300 F.R.D. at 692. State Farm is ordered to serve an amended response and produce all documents responsive to Request for Production 6 within twenty-one (21) days of entry of this memorandum opinion and order.

---

[33]The Court would be remiss if it did not also mention State Farm's failure to fully comply with the Court's order regarding an exchange of offers and counteroffers prior to the recent settlement conference, as noted by the Court at the start of the settlement conference.

[34] *See, e.g. Rapid City/BH Lodging, LLC*, 2024 WL 1937858, at *7 ("Although personnel files often contain sensitive and confidential information, they tend to reveal an insurance company's culture in ways that cannot be obtained from some other source that is more convenient, less burdensome, or less expensive." (internal quotation marks and citation omitted)); *Barela*, 2014 WL 11497826, at *10 (citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 640 (10th Cir. 2008) (stating that the discovery of personnel files is not categorically out-of-bounds when requested information is narrowly tailored); and *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 692 (D. Kan. 2014) (finding personnel files of claims handlers to be discoverable in cases alleging bad faith handling of an insurance claim)).

### 6.    Performance and Training Materials (Requests for Production 15, 16, 17, and 24)

Plaintiff states that this grouping of discovery requests seeks all documents, including scorecards, underwriting communications, and directives, on State Farm's internal site regarding performance for all individuals who worked on Plaintiff's claim, as well as training materials used in New Mexico. (Doc. 30 at 7).[35] "Plaintiff contends that the internal graded performance of applicable employees goes directly to bias and how their performance may have informed their behavior as it relates to adjusting Plaintiff's claim." (*Id.*). He argues the same rationale "applies to directives, communications, and those directly related to New Mexico, given to employees, which help to demonstrate the efforts given to reducing company costs or UM/UIM coverage losses." (*Id.*). State Farm appears to primarily object to these requests because of their broad temporal scope. (Doc. 36 at 11-12). However, Plaintiff agreed to limit the time scope of these requests to the claim handling period (2022-2024). *See* (Doc. 41 at 8). Presumably, State Farm could have reached agreement with Plaintiff on a narrower scope had it engaged in good faith discussions with that goal in mind, rather than standing on the same relevancy objections that it has made for most of the other discovery requests at issue, which objections ignore Plaintiff's bad faith and related statutory tort claims.

---

[35] *See Request for Production 15* ("Produce all documents on the MIP site of the intranet including the scorecard details and additional plan materials for each year from 2015 to present date. Including all scorecard results for any individual involved in handling or reviewing Plaintiff's claim."); *Request for Production 16* ("Produce a copy of all directives, incentive programs, pay initiatives, and claims handling programs designed to reduce company costs and/or reduce UM/UIM automotive coverage losses, from 2010 to the present."); *Request for Production 17* ("Produce all underwriting communications, documentation, directives, incentives, and protocols in any way related to the sale of UM/UIM coverage and sale of stacked UM/UIM coverage in New Mexico for the last 5 years."); *Request for Production 24* ("All orientation materials including all pamphlets, rules, policies, procedures, employee handbooks, 'code of ethics,' any other related documents, and videos provided by Defendant State Farm, or anyone working on its behalf, to its New Mexico agents regarding the sale of automotive coverages, from 2010 to the present.").

Among other things, Request for Production 15 seeks "scorecards" for a ten-year period, now reduced to a two-year period. "Scorecards" apparently refer to data that measures or evaluates on a monthly, quarterly, and/or annual basis the performance of each employee. *See Wright v. State Farm Fire & Cas. Co.,* No. 2:23-CV-179, 2024 WL 4979849, at *2 n.1, n.2, *3 (W.D. Wash. Dec. 4, 2024). State Farm argues that Request for Production 15 seeks scorecards for "unidentified employees," but the employees are identified as "any individual involved in handling or reviewing Plaintiff's claim." As scorecards reflect how an employee's performance is evaluated, they are relevant to the bias or motivation of any employee who was involved in the adjustment of Plaintiff's insurance claim. *See Wright,* 2024 WL 4979849, at *3 (scorecards have "some tendency to make [the plaintiff's] bad faith claim and related tort claims more or less probable" (citing FED. R. EVID. R. 401)); *Fair v. Royal & Sun Alliance*, 278 F.R.D. 465, 476 (D.S.D. 2012) ("The use of 'scorecards' appears to be an instrument whereby Sedgwick manages its employees' performance in the handling of claims. It is relevant.").

That having been said, the Court cannot tell whether the request for "all documents on the MIP site of the intranet …. and additional plan materials" is overbroad, even with the added time limitation, because neither party has clarified what production of those documents would entail. Additionally, Requests for Production 7 and 8 already appear to seek relevant MIP documents, so Request for Production 15 could be duplicative in that regard. If the parties disagree over the remaining scope of Request for Production 15, they should meet and confer. The Court anticipates that they should be able to reach agreement on the requested production now that the time scope has been narrowed and the Court has made clear that incentive plans, employee bonuses, and the like, are relevant to Plaintiff's bad faith claims. If State Farm has any objections based on undue

burden, it is instructed to provide Plaintiff with specific factual details regarding the nature of the burden as part of the good-faith conferral process.

Insofar as Requests for Production 16 and 17 refer to incentive programs and pay initiatives, that subject has already been addressed in relation to Requests for Production 20 and 21. Request for Production 17 appears to be broader in scope, however, seeking any such programs or initiatives "in any way related to the sale of UM/UIM coverage and sale of stacked UM/UIM coverage in New Mexico." State Farm has made no showing that responding to Request for Production 17 would be unduly burdensome if limited to the time period stated in Plaintiff's reply brief. To the extent that these requests cover other matters, such as directives, claims handling programs, or protocols, those types of documents are similarly relevant and would not appear to be unduly burdensome if limited to the claim handling period. That conclusion would apply as well to "underwriting communications" in Request for Production 17, which, consistent with the other items mentioned, the Court presumes to mean general directives or policies about underwriting for the sale of UM/UIM coverage.

Finally, Request for Production 24 seeks employee handbooks, policies and procedures for New Mexico agents related to automotive coverage. Once again, State Farm's overbreadth arguments ignore that Plaintiff has agreed to reduce the timeframe to the policy adjustment period. And the Court has already addressed State Farm's default argument repeated in relation to Request for Production 24 that this information does not "relate directly to any of the claims or defense regarding the coverage decision here." (Doc. 36 at 12). The Court finds that State Farm's employee handbooks and policies are relevant to Plaintiff's bad faith claims, and that producing those documents does not appear to be unduly burdensome when limited to the time period previously stated. *See, e.g., United Prop. & Cas. Ins. v. Couture*, No. 2:19-CV-01856-DCN, 2020 WL

2319086, at *7 (D.S.C. May 11, 2020) (finding that claims handbooks, training videos, computer modules, employee handbook, standard operating procedure, policies, procedures manual, or internal directives used by insurer's claims adjusters and managers for the processing, investigation, review and/or adjustment of claims were relevant to bad faith claim and did not appear unduly burdensome). Accordingly, State Farm is ordered to serve amended responses and produce all documents responsive to Requests for Production 15, 16, 17, and 24 as set forth herein within twenty-one (21) days of entry of this memorandum opinion and order.

### 7.    Reserve Amounts (Interrogatory 13)

Plaintiff seeks identification of each reserve amount set for Plaintiff's claim and the dates each reserve was set.[36] According to Plaintiff, reserve amounts are relevant to his claims because they reflect State Farm's internal assessment of claim value and liability exposure. (Doc. 46 at 7). State Farm asserts that reserve amounts are irrelevant because they are established for accounting and regulatory compliance purposes, not for evaluating liability or the merits of a specific claim. (Doc. 43 at 9). State Farm then states that notwithstanding its argument for lack of relevance, reserve information was included in the claims file that was produced, and therefore it has in fact responded to Interrogatory 13. (*Id.* at 9-10).

In *Barela,* the court found that the reserve information specific to the plaintiff's claim was relevant and discoverable. *See Barela*, 2014 WL 11497826, at *7 (citing *United States Fire Ins. Co. v. Bunge N. Am., Inc*., 244 F.R.D. 638, 644 (D. Kan. 2007) (affirming holding that reserve information is discoverable where a claim of bad faith is asserted); and *Morrison v. Chartis Prop. Cas. Co*., No. 13–CV–116–JED–PJC, 2014 WL 840597, *2 (N.D. Okla. Mar. 4, 2014) (finding

---

[36] *See Interrogatory 13* ("Identify each reserve amount set for Plaintiff's claim, as well as the date each reserve amount was set.").

that loss reserve information is discoverable in bad faith cases)). The *Barela* court therefore ordered the defendant to produce reserve information with respect to the plaintiff's uninsured/underinsured motorist claim, including the date the reserve was established; the amount of the loss reserve; and who determined the amount of the loss reserve. *Id.*[37]

The Court recognizes that the method by which State Farm sets its reserves may bear on the degree to which the reserve amounts are relevant. *See Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 330 (N.D.W. Va. 2006) ("Relevancy of reserve information turns on the unique factors in each case and, thus, cannot be considered in a vacuum."). But State Farm has not provided any specific facts to support its relevancy argument. And allowing the discovery, which State Farm has not argued is unduly burdensome, will not preclude State Farm from arguing down the road that the probative value of reserve information is outweighed by the prejudicial effect of that evidence. Accordingly, State Farm is ordered within twenty-one (21) days of this memorandum opinion and order to provide a written response to Interrogatory 13. The response shall either (1) affirm that information found in the already-produced claim file reflects the *full* extent of the reserves on Plaintiff's claim, or, if that is not an accurate statement, (2) fully responds to Interrogatory 13 as written.

### 8.   Methodologies and Tools For Uninsured/Underinsured Claims Processing (Interrogatory 23)

Plaintiff seeks identification of all methods, tools, methodologies, computer programs or other systems used to investigate, determine, value, analyze, approve, disapprove or organize

---

[37] *See also Taco, Inc. v. Fed. Ins. Co.*, No. CIV.A. 07-27S, 2007 WL 4269810, at *1 (D.R.I. Nov. 30, 2007) ("Courts allowing discovery on loss reserves have based their reasoning in part on the duty owed to an insured by the insurance company that is the subject of the bad faith claim." (quoting *Brand Mgmt, Inc. v. Maryland Cas. Co.*, No. 05–CV–02293, 2006 U.S. Dist. Lexis 40205 at *5 (D. Colo. June 15, 2006) (citations omitted)); *Culbertson v. Shelter Mut. Ins. Co.*, No. 97–1609, 1998 WL 743592 (E.D. La. Oct.21, 1998) (following "line of cases which hold that reserve information is discoverable where a claim of bad faith is asserted").

UM/UIM insurance claims.[38] According to Plaintiff, the methodologies, computer programs, and systems that State Farm uses to evaluate UM/UIM claims are relevant because they "reveal[ ] whether Defendant adhered to its internal procedures in evaluating Plaintiff's claim and whether any systematic bias exists in Defendant's claim evaluation." (Doc. 33 at 4).

State Farm responded to Interrogatory 23 by directing Plaintiff to the claim file for how Plaintiff's claim was evaluated. *See* (Doc. 43 at 7). Plaintiff argues, however, that "[t]he claim file alone cannot reveal the broader systemic tools and methodologies employed." (Doc. 33 at 4); *see also* (Doc. 46 at 8 ("The claim file cannot and does not reveal the underlying computer algorithms, scoring systems, or decision trees that guided the adjusters' actions.")). According to State Farm, *Grove* supports limiting discovery to how Plaintiff's claim was evaluated, arguing that the court in that case rejected a discovery request substantially similar to Interrogatory 23. *See* (Doc. 43 at 7). But the discovery requests addressed in *Grove* were requests to produce documents related, not to the insurer's claims handling practices in general, but to *other lawsuits and complaints about the insurer's claims handling practices. See Grove*, 2014 WL 11636148, at *1. Discovery similar to Interrogatory 23—which seeks the methodologies, programs, or other systems State Farm uses to evaluate UM/UIM insurance claims—was simply not addressed in *Grove*.[39]

State Farm's default argument that "the instant case has not brought a claim based on any alleged pattern or systemic failure to properly adjust claims" (Doc. 43 at 8), has previously been discussed and rejected. Unless State Farm were to present specific facts to show that responding

---

[38] *See Interrogatory 23* ("Identify all methods, tools, methodologies, computer programs or other systems used to investigate, determine, value, analyze, approve, disapprove or organize Uninsured/Underinsured insurance claims and coverage.").

[39] The Court also notes that the request at issue here is an interrogatory, not a request for documents, like in *Grove*. Moreover, the *Grove* court actually ordered the discovery requested in that case in the form of a written response, finding both that the information was relevant and that providing a written response (as opposed to producing documents) was *not* unduly burdensome.

to the interrogatory would be unduly burdensome and disproportionate to the needs of the case, which it has not done, the requested information is relevant and discoverable. State Farm relies solely on the assertion of "questionable relevance," and therefore has not met its burden of demonstrating that the discovery should not be had.

Accordingly, State Farm is ordered to provide a written response to Interrogatory 23 within twenty-one (21) days of this memorandum opinion and order. The response shall identify all computer programs, systems, and methodologies used in evaluating UIM claims, limited, as stated in Plaintiff's reply, to those in use during Plaintiff's claim period (2022-2024).

### 9.    TEACH and ACE Materials (Interrogatory 24)

Plaintiff seeks identification of policies, procedures, guidelines, directives, memos, and trainings for New Mexico adjusters, including TEACH, ACE and other programs.[40] According to Plaintiff, the information sought by Interrogatory 24 is relevant to understanding how State Farm trains its adjusters to handle and pay claims like Plaintiff's and whether such training promotes proper claims handling or creates bias against insureds. *See* (Doc. 33 at 5). While State Farm agreed to produce some training materials or guidelines, it objected to producing any TEACH or ACE materials because those programs "are not relevant here and there is no evidence that they were used here." (Doc. 43 at 8).

TEACH and ACE are acronyms for "Total Evaluation and Claim Handling" and "Achieving Claims Excellence." *See Sims*, 2014 WL 12650652, at *2, 4. The former apparently is a training course, *id.* at *2, while the latter refers to an internal study or initiative regarding State

---

[40] *See Interrogatory 24* ("Identify, in any form including electronic, written, or oral any policies, procedures, guidelines, directives, memos, and trainings, setting forth the standards, rules, ethics, guidelines or protocols State Farm requires it[s] adjusters handling New Mexico claims to follow in adjusting claims, includ[ing] TEACH, ACE and other programs separate from just the Auto Claim Manual.").

Farm's claims-handling procedures. *See Lopez v. State Farm LLloyds,* 348 F.R.D. 419, 423 (W.D. Tex. 2025); *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CIV 12-399-TUC-CKJ, 2013 WL 4046700, at *1 (D. Ariz. June 3, 2013). State Farm has said that the purpose of the ACE study "was to help find additional ways to give the best value to its customers," while insureds have argued that its purpose "was to identify ways to artificially lower claim payouts." *Lopez*, 348 F.R.D. at 423; *see also Sims*, 2014 WL 12650652, at *4 ("Sims argues that the Achieving Claims Excellence program was the program that began State Farm's strategy of forcing claims into litigation."); *Barton*, 2013 WL 4046700, at *1 ("Barten believes that State Farm used the results of this study to change its claims processing procedures in a way that maximized profit at the expense of policy holders."). A number of courts have allowed discovery of these programs on the ground that they are relevant to the plaintiff's bad faith claims. *See, e.g., Sims*, 2014 WL 12650652, at *2 ("Documents that relate to State Farm's strategy of paying claims are relevant to whether State Farm underpaid [the plaintiff], to whether State Farm purposefully underpaid [the plaintiff], to whether State Farm was dishonest, malicious, or oppressive in its reasons for possibly underpaying [the plaintiff], and to the general decision-making processes that State Farm used to evaluate [the plaintiff's] claim." (internal citations and footnote omitted)).[41]

State Farm's sole argument against discovery of the TEACH and ACE materials is that those materials are not relevant because "there is no evidence that they were used here." This is

---

[41] *See also Lillibridge v. Nautilus Ins. Co*., No. CIV 10-4105-KES, 2013 WL 1896825, at *10 (D.S.D. May 3, 2013) (requiring production of claims manuals, quality assurance manuals, and audit procedures, including older or newer versions of those documents, as relevant to the plaintiff's bad faith case as to whether the defendant properly handled or evaluated his claim); *Akins v. State Farm Mut. Auto. Ins. Co.,* No. 10-CV-12755, 2011 WL 3204839, at *7–8 (E.D. Mich. July 28, 2011) (finding ACE materials relevant because there was "plenty of evidence to support the proposition that State Farm's employees, including its case managers, were trained beginning in the 1990s on the ACE program, and that they were to employ it thereafter in doing their job"); *Chauvin v. State Farm Mut. Auto. Ins. Co.,* Civil Action No. 10–CV–11735, 2011 WL 1810625, at *2-3 (E.D. Mich. May 11, 2011) (finding that ACE documents were relevant on the issues of "adjusting practices, reasons for denial, and the decision-making process").

not the first time State Farm has used the phrase "there is no evidence of" something, when the

something is within State Farm's knowledge and control. This manner of argument leaves the

Court wondering whether there is in fact "no evidence," or whether State Farm is simply relying

on Plaintiff's lack of knowledge concerning evidence that might actually be revealed if Plaintiff

had access to it. The ambiguity created by State Farm's approach is on full display in State Farm's

explanation in its response brief of its objection to Interrogatory 24 in its Discovery Responses.

According to the response brief, State Farm objected in its Discovery Responses on multiple

grounds, including that some of the training materials were obsolete on the date of loss or did not

pertain to claims adjusted in New Mexico," but State Farm admits that the objection might have

been unclear about the materials to which it was referring. (Doc. 43 at 8). State Farm goes on to

say:

> While State Farm did not clarify in its objections that the TEACH
> and ACE materials were part of the obsolete or extra-jurisdictional
> materials referenced, it is well-established that these are decades
> old, *see, e.g., Lopez v. State Farm Lloyds*, 348 F.R.D. 419, 423
> (W.D. Tx. 2025) (providing a background of ACE, including that it
> was an internal study of State Farm's claim handling procedures
> conducted in the 1990s), and, therefore, not subject to production.
> *Id.* at 429.

(*Id.*).

The Court cannot tell from the phrasing in the above excerpt from State Farm's response

brief whether State Farm is representing that, as a matter of fact, neither TEACH nor ACE

materials were used to train New Mexico adjusters, or whether State Farm is merely saying that a

district court in Texas found that the materials were decades old and therefore not subject to

production. Either way, State Farm has not supported its assertion in this case that the TEACH and

ACE materials are "obsolete or extra-jurisdictional." In comparison, in *Lopez*, State Farm

produced a declaration of an individual familiar with the ACE materials which stated that "[n]one

of the Fire ACE initiatives were in use on … the date of the loss of this lawsuit." 348 F.R.D. at 424. Although the *Lopez* court declined to consider the declaration because State Farm failed to disclose the declarant as a potential witness, the court granted the plaintiff leave to depose the declarant *because* it found that the *subject of whether the ACE materials were in use during the timeframe of the plaintiff's loss* was "relevant to [the plaintiff's] claims and State Farm's denials." *Id*. at 426.

The issue of whether the TEACH and ACE materials were in use during the timeframe of Plaintiff's loss is relevant here too. According to Plaintiff, "[t]hese programs have been updated over time, and even historical versions are relevant to understanding State Farm's institutional approach to claim handling." (Doc. 46 at 8). Plaintiff's belief regarding the impact of these programs on State Farm's current claims handling practices is not speculative. *See, e.g., Lopez*, 348 F.R.D. at 423 n.21 (where State Farm's representative testified: "We may no longer use the term ACE, but quality in our claims operations is still our responsibility. ACE provided a foundation; it enabled us to build a more comprehensive quality assurance program into our way of doing business."). Therefore, Plaintiff does not need to accept State Farm's blanket assertion that the materials in question are "obsolete"; it is entitled to test that assertion through discovery. *See, e.g., Van Emon v. State Farm Mutual Automobile Ins.,* Co., No. 05-CV-72638, 2008 WL 205243, at *3 (E.D. Mich. Jan. 24, 2008) ("whether or not the ACE initiatives were applied to Plaintiff's case is a proper subject of discovery").

As one court explained in rejecting the identical argument State Farm makes here:

> State Farm argues that some of the claims-handling materials requested had ceased being used as training manuals or materials by the time [the plaintiff's] accident occurred. *See, e.g*., Document #22-1 at 19 (State Farm's Response to Request for Production 16) ("Material on which individuals were trained prior to the date of loss which was obsolete prior to the date of loss is neither material nor

> relevant to the coverages and matters at issue in this case."). Those
> materials still are reasonably calculated to lead to the discovery of
> admissible evidence. [The plaintiff] argues, and other courts have
> found, that while the names of different training programs and
> manuals have changed, the strategies put in place by those programs
> continue to influence the ways in which State Farm handles claims.

*Sims*, 2014 WL 12650652, at *2; *accord Barten*, 2013 WL 4046700, at *2 ("It appears that the

ACE assessment approach continues to influence State Farm's corporate culture. And, this culture

is relevant to the handling of Barten's claims. Accordingly, the documentation of programs that

were informed by or grew out of the original ACE principles is discoverable.").

The sole case cited by State Farm in opposition to compelling discovery of the ACE and

TEACH materials is *Lopez*, and that court denied a motion to compel on proportionality, not

relevance, grounds, pointing to the fact that the plaintiff's document production request would

likely "encompass thousands, if not hundreds of thousands documents." 348 F.R.D. at 428.

Responding to Interrogatory 24 does not entail the same burden that would be imposed by

producing thousands of documents. While both parties appear to anticipate the production of

documents in response to Interrogatory 24, nonetheless the Motion to Compel as to Interrogatory

24 seeks a written response, not the production of documents.[42] The *Lopez* court also cited other

factors that it analyzed as part of the proportionality inquiry, none of which are addressed by State

---

[42] The Court is unable to determine whether Plaintiff's definition of "identify" might be unduly burdensome because the original discovery requests which include the definitions are not in the record. But State Farm has not made that argument in response to Plaintiff's Second Motion to Compel. The parties may be assuming the production of documents based on Request for Production 1, which states "Please produce copies of any documents that were used in preparing your answers to Interrogatories." (Doc. 30-1 at 34). However, State Farm's only objections to Request for Production 1 were that it "calls for information that is privileged under the work product doctrine," and it "is cumulative to Plaintiff's Interrogatories." (*Id.*). Plaintiff has not moved to compel a further response to Request for Production 1, and State Farm does not raise that request as part of its objections to Interrogatory 24. Therefore, the issue of document production is not before the Court (except to the extent that it is raised by other discovery requests addressed elsewhere in this Order, and those are addressed elsewhere in this Order). Of course, State Farm may opt to produce documents rather than provide a written response to Interrogatory 24 if doing so satisfies Federal Rule of Civil Procedure 33(d). But in that situation, the only documents it would have to produce would be those necessary to identify the guidelines and protocols at issue, a much smaller subset of ACE and TEACH materials than was called for by the requests for production at issue in *Lopez,* 348 F.R.D. at 426-27.

Farm here. For instance, the *Lopez* court cited to the fact that the plaintiff's compensatory losses in that case amounted to only around $50,690, *see id.* at 429, whereas here, Plaintiff asserts compensatory losses of more than ten times that amount. Additionally, the *Lopez* court noted as part of its proportionality analysis that the plaintiff's counsel in that case already had "access to information pertinent to the ACE study or program," which "access diminishe[d] the importance of the requested documents in resolving the issues in this action." *Id.* State Farm has not made any similar access argument here.

In sum, the Court finds that State Farm has not met its burden of refuting Plaintiff's showing of relevance or of demonstrating that the requested discovery is disproportional to the needs of the case. Accordingly, State Farm is ordered within twenty-one (21) days of this memorandum opinion and order to fully respond to Interrogatory 24, limited to identifying materials or portions of materials applicable to UM/UIM insurance claims processed in New Mexico.

### 10. Applications, Renewals, and Billing Statements (Requests for Production 4 and 5)

Plaintiff seeks complete copies of all applications, renewals, billing statements, and premium summaries between Plaintiff and State Farm.[43] State Farm argues that this information is irrelevant because "there is no dispute in this case that Plaintiff has UM/UIM stacked coverage; instead, the issue is whether State Farm appropriately denied his claim for such coverage." (Doc.

---

[43] *See Request for Production 4* ("Produce a complete copy of all applications and renewals for coverage (including all documents reflecting any addition, deletion, change, modification, or endorsement to coverage during each policy period) between Plaintiff and State Farm and between Plaintiff and any other State Farm-affiliated insurer."); *Request for Production 5* ("Provide a complete copy of all billing statements, charges and premium charge summaries from State Farm, and/or any other State Farm-affiliated insurer, to Plaintiff (including every such document reflecting an addition/deletion/modification/change/endorsement between policy periods).").

43 at 10).[44] Plaintiff responds that State Farm's objection "miss[es] the point" because, while coverage may not be disputed, the documents sought by Requests for Production 4 and 5 "are relevant to understanding the complete relationship between Plaintiff and Defendant, including any communications regarding UM/UIM coverage, stacking elections, and premium calculations." (Doc. 33 at 6). For instance, Plaintiff argues, establishing the premium calculation for stacked coverage is important given that State Farm denied in its responses to Plaintiff's Requests for Admission that stacking was present, but states in its response to the Second Motion to Compel that there is "no issue" as to stacking. (Doc. 46 at 9); *see* (Doc. 43 at 10 ("There is no issue regarding stacking, payment or billing ….")).

The Court agrees with Plaintiff that the information sought by these requests is relevant to whether State Farm's claim valuation was consistent with how it marketed and sold UM/UIM coverage, and that State Farm has not met its burden of refuting the relevance of the information or of demonstrating lack of proportionality. Accordingly, State Farm is ordered within twenty-one (21) days of this memorandum opinion and order to respond to Requests for Production 4 and 5

---

[44] State Farm's Discovery Responses at times read as if State Farm merely copied generic objections it has used in other cases. This is one of those times. State Farms states that it objects to Requests for Production 4 and 5 because they are "vague and ambiguous as to what is meant by an 'underwriting file.'" (Doc. 30-1 at 39, 40). The term "underwriting file," however, does not appear in either Request for Production 4 or 5. Rather the requests seek categories of documents that likely would be included in an underwriting file if one were to exist. State Farm also objected to Requests for Production 4 and 5 "to the extent that [they] assume a physical underwriting file folder exists." (*Id.*). This objection is a deflection. The requests seek certain types of documents, regardless of where State Farm maintains them. Still, State Farm picks up on this objection in its response to the Second Motion to Dismiss by arguing that Plaintiff "ignores State Farm's explanation in its objection that there is no underwriting file; rather, underwriting information is stored in multiple locations." (Doc. 43 at 10). The relevancy of that information is unclear given that Plaintiff seeks specified documents wherever they are stored. In its objections—but not in its response to the Second Motion to Compel—State Farm asserted that this information is relevant because it means the requests have "the potential to be unduly burdensome." (Doc. 30-1 at 39, 40). But "a party 'may not excuse itself from compliance with Rule 34 ... by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition.'" *Oklahoma, ex rel. Edmondson*, No. 05-CV-329-GKF-SAJ, 2007 WL 1498973, at *3 (N.D. Okla. May 17, 2007) (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976)).

by producing all responsive documents, limited as Plaintiff states his reply (Doc. 46 at 9) to the policy period in question.

### 11. Internal and External Communications Regarding Plaintiff (Requests for Production 22 and 23)

Plaintiff seeks agency notes, communications, and documentation regarding Plaintiff from 2010 to the present.[45] State Farm asserts that these requests are "not limited to the specific insurance claim or coverage at issue in this lawsuit, [are] virtually unlimited as to time as [they] encompass[ ] decades, and further encompass[ ] broad categories of documents that State Farm otherwise objected to producing." (Doc. 43 at 11). State Farm goes on to state that, notwithstanding these objections, it produced the claim file, "which contains responsive documents pertinent to the subject claim." (*Id.*). Plaintiff argues that this response is inadequate because "[a]gency communications and documentation [about Plaintiff] may exist outside the formal claim file, including in agent files, underwriting communications, or other business records," and State Farm "should be required to conduct a reasonable search beyond its standard claim file and either produce responsive documents or provide a more specific statement that no such documents exist." (Doc. 33 at 6-7). According to State Farm, however, "Plaintiff offers no argument or evidence that responsive documents ***about the subject claim*** would exist outside the claim file," and "discovery about material that existed decades before this claim arose, after this claim arose, and that does not even pertain to this claim does not come close to meeting the proportionality requirement." (Doc. 43 at 11) (italicize, bold, and underline in original)).

---

[45] *See Request for Production 22* ("Provide all agency notes, diaries, journal entries, logs, and any other written communications and documents regarding Plaintiff, in all forms and formats, from 2010 to the present."); *Request for Production 23* ("Provide all agency documentation and communications, whether from the agency or carrier (i.e., State Farm), sent to Plaintiff from 2010 to the present.").

By the term "subject claim," State Farm appears to once again seek to limit discovery to the valuation issue, which is the subject of Plaintiff's coverage and breach of contract causes of action, ignoring that Plaintiff is also entitled to discovery on his bad faith and statutory tort causes of action. In addition, Plaintiff does not have to prove that documents responsive to these requests exist outside the claim file in order to obtain the discovery; whether such documents exist outside the claim file is exactly what Plaintiff is trying to find out. Beyond that, the Court is somewhat perplexed by State Farm's argument regarding undue burden. State Farms appears to be suggesting that the interactions between these two parties have been so extensive over such a long period of time that requiring State Farm to respond to the requests would be out of proportion to the needs of the case. That suggestion is somewhat difficult to believe, even if Plaintiff has been a customer of State Farm for a long period of time. The credibility of that suggestion aside, however, Plaintiff states that, although the original time period was justified,[46] he agreed in his May 5, 2025 email to limit the time span to five years. (Doc. 46 at 9). Noting that State Farm cites to the proportionality requirement without making any kind of argument—even a conclusory one—that responding to Requests for Production 22 and 23 would be burdensome, the Court finds State Farm's arguments against the discovery in question to be unconvincing.

The Court agrees with Plaintiff that prior claims history, coverage changes, or communications can be relevant to Plaintiff's bad faith claims, and that State Farm has failed to rebut the relevancy or establish a supportable argument for lack of proportionality. Accordingly, State Farm is ordered to conduct a reasonable search of its records systems for documents responsive to Requests for Production 22 and 23 for the policy period and five years prior, and,

---

[46] *See* (Doc. 46 at 10 ("Insurance relationships often span decades, and prior claim history, coverage changes, or communications can be relevant to bad faith claims.")).

within twenty-one (21) days of this memorandum opinion and order, either produce any responsive documents or provide a sworn statement that no such documents exist outside those that have already been produced.

### 12.    Claim Evaluation and Evaluation Practices (Requests for Production 27, 28 and 29)

Although Plaintiff groups these requests together, the Court finds it makes sense to address Request for Production 27 separately from Requests for Production 28 and 29.

**Request for Production 27**

Request for Production 27 seeks training material relied on by State Farm in refusing to evaluate its insureds' injuries until it knows what an underlying tortfeasor's liability limits are.[47] State Farm asserts that "it is unclear as to what allegation in the Complaint is referenced by Plaintiff." (Doc. 43 at 12). But it seems relatively clear to the Court that the request goes to Plaintiff's bad faith and unfair practices claims. State Farm also refers to its argument concerning Interrogatory 24 and the supposedly "obsolete" ACE and TEACH material, which the Court has already rejected. The Court also rejects State Farm's single-sentence, conclusory objection that "such a request does not meet the proportionality test." (*Id.*); *see Smash Tech., LLC,* 335 F.R.D. at 447 (boilerplate objections, which include "explanation-less 'undue burden' objections," and similar objections that lack specificity, are insufficient). Finally, State Farm asserts that Plaintiff's request displays a misunderstanding of UIM coverage, because such coverage "does not even exist unless and until Plaintiff establishes the liability of the alleged tortfeasor and exhausts his or her insurance coverage." (*Id.*). While that may be true insofar as the insurance claim for UM/UIM benefits is concerned, the discovery request at issue seeks information about State Farm's timing

---

[47] *See Request for Production 27* ("Produce all training material relied on by State Farm in refusing to evaluate its insureds' injuries until it knows what an underlying tortfeasor's liability limits are.").

for evaluating the insured's *injuries*, not the insured's UM/UIM *claim*. And if it is true, as State Farm suggests, that it makes no sense to evaluate the insured's injuries before coverage for those injuries under the tortfeasor's policy is determined, then presumably State Farm will be able to respond to the request by simply stating that it has no responsive documents.

The Court also finds that, to the extent that ACE, TEACH, or other training materials are responsive to Request for Production 27—i.e., the training materials in question are relied on by State Farm in refusing to evaluate its insureds' injuries until it knows what an underlying tortfeasor's liability limits are—those materials are discoverable and should be produced. Accordingly, State Farm is ordered to conduct a reasonable search of its training materials for documents responsive to Request for Production 27, and, within twenty-one (21) days of this memorandum opinion and order, either produce any responsive documents or provide a sworn statement that no such documents exist.

### Requests for Production 28 and 29

The final two discovery requests seek documents related to State Farm's evaluation of Plaintiff's claim for UM/UIM benefits.[48] Plaintiff argues these requests seek information central to his bad faith claims. That argument seems logical and makes sense to the Court. State Farm responded to these requests with the statement that it was producing Plaintiff's claim file excluding documents protected by the attorney client privilege and/or the work product doctrines. *See* (Doc. 30-1 at 56-57). State Farm points out that it produced a privilege log regarding the documents withheld from the claim file based on an assertion of attorney-client privilege or work-product. Plaintiff does not dispute that a privilege log was produced, but states that his Motion to Compel

---

[48] *See Request for Production 28* ("Produce all documents related to the 'Current Value' of this claim."); *Request for Production 29* ("Produce all ECS Injury Evaluation Detail pages related to this claim.").

does not concern the withheld documents over which privilege was asserted. Rather, Plaintiff seeks to compel a further response to Requests for Production 28 and 29 because he cannot tell if State Farm has in its possession but is withholding documents that would be responsive to those requests *other than* the documents listed on the privilege log.

The Court agrees with Plaintiff. Request for Production 28 seeks all documents related to the Current Value of Plaintiff's claim. State Farm responded as follows:

> RESPONSE: State Farm expressly objects to Request for Production No. 28 to the extent it seeks information protected by the attorney client privilege and/or attorney work product doctrine, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product.

(Doc. 30-1 at 56). The Response states it is producing non-privileged portions of the claim file, but does not state whether the claim file contains all documents in State Farm's possession that would be responsive to the request for documents related to the current value of Plaintiff's claim.

Request for Production 29 seeks all ECS Injury Evaluation Detail pages related to Plaintiff's claim. State Farm responded as follows:

> RESPONSE: State Farm objects to Request for Production No. 29 on the grounds that it is vague, ambiguous, and overly broad in scope and time. State Farm further objects to Request for Production No. 29 to the extent that it seeks confidential, proprietary business information and/or documentation. Additionally, Request for Production No. 29 is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these or any other objections, State Farm states that information reflecting the personnel involved in adjusting the subject claim, see the Claim File pertaining to the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Claim Procedures Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm is producing its Claim File in reasonably usable format as it does in the ordinary course of business. State Farm is withholding information protected by the attorney client privilege and/or the work product doctrine.

(*Id.* at 57). Once again, it is unclear from State Farm's Response whether any documents responsive to the request exist outside the claim file. State Farm's Response to Request for Production 29 is also improper because of the language "subject to and without waiving these or any other objections." "Conditional responses … when a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections,  ….[are] 'invalid,' 'unsustainable,' and [ ]'violate common sense,'" because they "allow the party seeking discovery no way of knowing whether no responsive document exist or whether responsive documents exist but are being withheld subject to the objection" *Reed Auto of Overland Park, LLC v. Landers McLarty Olathe KS, LLC*, No. 19-02510-JWB-KGG, 2020 WL 5118103, at *2–3 (D. Kan. Aug. 31, 2020) (internal quotation marks and citations omitted)).

Accordingly, within twenty-one (21) days of this memorandum opinion and order, State Farm must either (1) provide a sworn statement clearly stating that no documents responsive to Requests for Production 28 and 29 exist outside the claim file and privilege log; or (2) produce all documents responsive to Requests for Production 28 and 29 that were not produced as part of the claim file and are not listed on State Farm's privilege log. State Farm may limit its response to materials in effect during the claim handling period (2022- 2024), per Plaintiff's proposed resolution in his reply brief (Doc. 46 at 10).

### C.    Rule 37(a)(5) Fees and Expenses

Plaintiff seeks to recover his reasonable expenses incurring in bring the Motions to Compel, including attorney's fees, pursuant to FED. R. CIV. P. 37(a)(5). *See* (Doc. 30 at 8; Doc. 33 at 7)). Rule 37(a)(5) states that if a motion to compel is granted, or if the disclosure or requested discovery is provided after the motion was filed,

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

> reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>> (iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A). The Rule also provides that if a motion to compel "is granted in part and denied in part, the court … may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

State Farm has had the opportunity but did not respond to Plaintiff's request for fees and expenses. The Court has found that most of State Farm's nondisclosures, responses, or objections were not substantially justified and has granted in substantial part Plaintiff's two Motions to Compel. State Farm has not argued that Plaintiff failed to make a good faith attempt to obtain the requested discovery without court action, and the Court finds that no other circumstances make an award of expenses unjust. Therefore, the Court will award Plaintiff some or all of its attorneys' fees and costs incurred in bringing the two Motions to Compel. Plaintiff is directed to submit its counsel's time records and documentation of expenses related to the two Motions so that the Court may determine the appropriate amount of fees and costs to be awarded. Plaintiff shall file his fee petition supported by affidavit or declaration within fourteen (14) days of this memorandum opinion and order. State Farm shall file its response to the fee petition within fourteen (14) days of Plaintiff's filing, and Plaintiff may file a reply within seven (7) days thereafter.

## V.    Conclusion

For the reasons discussed above, Plaintiff's First Motion to Compel Defendants' Written Discovery Responses (Doc. 30), and Plaintiff's Section Motion to Compel Defendants' Written Discovery Responses (Doc. 33) are GRANTED IN PART as set forth above.

IT IS SO ORDERED, this 21st day of October 2025

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE