**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LORENZO GARCIA,

        Plaintiff,

v.                                                                  Civ. No. 24-1286 KK/KRS

STATE FARM INSURANCE
COMPANY, *et al*.,

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendants' Motion to Exclude Certain Opinions of Plaintiff's Expert Elliott Flood (Doc. 110) ("Motion"), filed January 12, 2026. Plaintiff responded in opposition to the Motion on January 30, 2026, and Defendants replied in support of it on February 20, 2026. (Docs. 115, 119.) The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, FINDS that the Motion is well taken and therefore GRANTS it as set forth below.

### I.   Factual Background and Procedural History

On October 23, 2024, Plaintiff Lorenzo Garcia ("Plaintiff") filed his original Complaint for Insurance Bad Faith, Unfair Trade Practices, Unfair Insurance Practices, Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, and Declaratory Relief (Doc. 3-2) ("Complaint") in state court against Defendants State Farm Insurance Company ("State Farm") and adjuster Randy Carney ("Defendant Carney"). Defendant Carney removed the Complaint to this Court on December 20, 2024. (Docs. 1, 3.)

In his Complaint, Plaintiff alleges that he was lawfully stopped at a red light when the vehicle Kenneth Childress was driving collided with the vehicle Pasty Ration was driving,

causing Ms. Ration's vehicle to strike the rear of Plaintiff's vehicle. (Doc. 3-2 at 3 ¶¶ 15-16.) Plaintiff further alleges that as a result of the accident he sustained permanent, disabling injuries requiring extensive medical treatment. (*Id.* at 3 ¶ 18.)

According to the Complaint, at the time of the collision, Plaintiff held a valid automobile insurance policy with State Farm, which included uninsured/underinsured motorist ("UM/UIM") coverage with policy limits of $600,000. (*Id.* at 3 ¶ 20.) Plaintiff alleges that the other drivers' auto insurance coverage was insufficient to compensate him for his injuries. (*Id.* at 4 ¶ 27.) Plaintiff further alleges that he timely submitted a claim for UM/UIM benefits to State Farm but that State Farm failed to pay him the full benefits he is owed under the policy. (*Id.* at 3 ¶¶ 21-22.)

In his Complaint, Plaintiff asserts claims against State Farm for UIM benefits (Count I), violations of the New Mexico Unfair Trade Practices Act ("NM UTPA") (Count II), breach of contract and the duty of good faith and fair dealing (Count III), bad faith failure to pay a first-party claim (Count IV), and violations of the New Mexico Unfair Insurance Practices Act ("NM UIPA") (Count V). (*Id.* at 4-8.) Against Defendant Carney, Plaintiff asserts claims for breach of contract and the duty of good faith and fair dealing (Count III). (*Id.* at 6-7.) Plaintiff also requests a judgment declaring "the respective rights and obligations of the parties" (Count VI). (*Id.* at 9.)

On June 30, 2025, Plaintiff disclosed Elliott Flood ("Mr. Flood") as an expert who may testify on Plaintiff's behalf at trial and produced Mr. Flood's report. (Doc. 48; Docs. 110-1, 110-2.) Mr. Flood has "more than 35 years of experience in the insurance industry" and is also inactive attorney. (Doc. 110-2 at 2 ¶ 2(a); Doc. 110-3 at 4; Doc. 110-4 at 1-2.) In his report, Mr. Flood stated that Plaintiff has retained him to "provide expert testimony on insurance industry customs, practices, and standards." (Doc. 110-2 at 2.) Specifically, Mr. Flood stated that his testimony will:

- Provide background information on the insurance business and explain technical jargon and insurance concepts as necessary to understand the insurance records pertaining to this case[;]

- Describe the standard practices a reasonable insurer would have applied under the circumstances[;]

- Render [his] opinions on whether [State Farm] complied with generally accepted industry customs, practices, and standards for proper claim handling[; and,]

- Rebut, if necessary, the opinions expressed by State Farm's witnesses concerning their opinions whether it complied with generally accepted industry customs, practices, and standards for proper claim handling.

(*Id.*)

By "appl[ying] the principles of proper claim handling to the facts" of the case, Mr. Flood has arrived at the following eleven opinions:

1. No reasonable insurer would value [Plaintiff's] UM claim at $2,500 after receiving detailed records showing permanent impairment, comparative imaging, and long-term lifestyle disruption.

2. It is inconsistent with industry standards to disregard the insured's medical records simply because of prior conditions or comorbidities. Reasonable insurers distinguish aggravation of a condition from unrelated health issues.

3. Industry standards require UM carriers to favor prompt and fair evaluation once damages are reasonably clear. Here, the radiological evidence and uncontroverted narrative support at least a good faith discussion of full policy limits.

4. Insurers handling first-party claims owe a heightened standard of fairness and transparency. State Farm's failure to articulate specific rebuttals to [Plaintiff's] deformity at L2, [his] use of a cane, or his diminished physical capacity reflects an absence of serious evaluation.

5. Offering a nuisance value settlement under these facts is outside standard claims practice. It fails to reflect the fiduciary-like responsibility insurers carry when handling UM claims for their policyholders.

6. State Farm did not adequately explain the basis for its settlement offer or denial. Industry standards require that insurers clearly and thoroughly communicate their valuation process to the insured, especially when denying

3

substantial elements of a first-party claim. The vague and conclusory rejection letters fail to meet that standard.

7. The medical records confirm new and acute findings consistent with traumatic injury, including a Grade 2 wedge deformity at L2 not present in pre-accident imaging. Any reasonable insurer would recognize this objective evidence as proof of new trauma.

8. It is standard practice in the insurance industry to treat aggravation of pre-existing conditions as compensable damages. The majority of claims involve individuals with prior medical history. Dismissing [Plaintiff's] injury claim based on his age or prior cancer treatment is inconsistent with how a reasonable insurer is expected to evaluate causation and damages.

9. Reasonable insurers are expected to differentiate between pre-existing conditions and post-accident aggravations. The ED records detail a sudden onset of pain at the moment of impact and confirm objective clinical findings, including spinal deformity and loss of vertebral height, none of which were present before the crash.

10. State Farm's failure to consider these objective radiographic findings and the treating provider's clinical narrative constitutes a deviation from accepted practices in injury claim evaluation, where both subjective complaints and objective imaging must be integrated into the assessment of damages.

11. Lowballing is a claims handling tactic in which the insurer makes an unreasonably low settlement offer that bears little relation to the actual value of the claim. Rather than engaging in a fair evaluation of the insured's injuries and damages, the insurer minimizes or disregards credible evidence and offers a nominal amount in hopes of forcing a quick resolution. This practice is inconsistent with industry standards, especially in first-party claims, where insurers are expected to give the benefit of the doubt to their policyholders and conduct an honest, good faith assessment of the claim's value.

   Lowballing is a negotiating tactic by which a claim representative knowingly offers far less than the merits of the claim warrant. Lowballing is undeniably effective in forcing claimants and insureds to accept settlements that may be lower than their claims deserve. <u>Lowballing is ethically indefensible</u>, even in response to an outrageously high settlement demand. As a tactic, lowballing may be effective yet it remains ethically unsupportable.

(*Id.* at 3-4 (emphasis in original) (quotation marks and ellipses omitted).) Defendants now move the Court to exclude portions of Mr. Flood's proffered testimony at trial. (Doc. 110.)

## II. Analysis

In the present Motion, Defendants ask the Court to "confine Mr. Flood's testimony to industry standards and customs relevant to this matter" and to prohibit him from "testify[ing] to any legal conclusions" and from "apply[ing] the law to the facts as part of his testimony at trial." (Doc. 110 at 1.) In his response, Plaintiff counters that all of Mr. Flood's proffered testimony is relevant and admissible. (Doc. 115 at 3.) As explained below, the Court concludes that some portions of Mr. Flood's proffered opinions would not be helpful to the jury and will limit his testimony accordingly.

Federal Rule of Evidence 702 provides that

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, trial courts perform a gatekeeping role, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). The proponent of expert testimony bears the burden of showing the proffered testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

In evaluating the admissibility of expert testimony, courts employ a two-part test, determining (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render the expert opinions at issue, and (2) whether the proffered testimony is reliable and relevant. *Sanderson v. Wyo. Hwy. Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020);

*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). "The relevance of such testimony also must be weighed against the danger of unfair prejudice, confusion of the issues, or misleading the jury as well as considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Am. Auto. Ins. Co. v. First Mercury Ins. Co.*, Civ. No. 13-439, 2017 WL 4410780, at *2 (D.N.M. Sept. 30, 2017) (citing Fed. R. Evid. 403) (quotation marks omitted).

Defendants do not challenge Mr. Flood's qualifications as an expert in insurance industry customs, practices, and standards. (Doc. 119 at 1.) Moreover, "[b]oth the language of Rule 702 and Tenth Circuit precedent make clear that the specialized knowledge required for expert testimony can be acquired through experience." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 924 (D. Colo. 2017) (quotation marks omitted). And according to his report and curriculum vitae, Mr. Flood has 35 years of professional experience in the insurance industry, including in positions of significant responsibility, as well as over a decade of professional experience as an attorney specializing in insurance law. (Doc. 110-2 at 2; Doc. 110-4 at 1-2.) His report also documents extensive experience as an expert witness in other insurance cases. (Doc. 110-2 at 2.) In short, at this juncture, it appears that Plaintiff will easily be able to qualify Mr. Flood as an expert witness at trial.

Defendants likewise do not challenge the reliability of Mr. Flood's proffered testimony in their Motion. (*See generally* Docs. 110, 119.) Trial courts have "broad discretion in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Rodriguez-Felix*, 450 F.3d at 1122. The reliability of expert testimony regarding insurance industry standards and best practices is generally "dependent upon the witness's knowledge of, and experience within, the insurance

6

industry." *Am. Auto. Ins. Co.*, 2017 WL 4410780, at *8 (quotation marks omitted). Such testimony is deemed reliable when the expert's knowledge of industry standards is "grounded in his experience." *Id.* And here, Plaintiff will likely present evidence at trial that Mr. Flood has significant knowledge of and professional experience in the insurance industry and that his knowledge and opinions are grounded in his experience. Thus, at this juncture, it appears that Plaintiff will be able to establish the reliability of Mr. Flood's opinions.

This leaves the disputed question of whether Mr. Flood's proffered opinions are relevant, *i.e.*, whether they will "help the trier of fact to understand the evidence or to determine a fact in issue." *Sanderson*, 976 F.3d at 1172 (quoting Fed. R. Evid. 702) (brackets omitted). In this regard, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). But it is generally not helpful for an expert to "state legal conclusions drawn by applying the law to the facts."[1] *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)); *Hansen Constr. Inc. v. Everest Nat'l Ins. Co.*, Civ. No. 16-2902, 2019 WL 2602510, at *3 (D. Colo. June 25, 2019). In other words, "[w]hile testimony on ultimate facts is authorized … testimony on ultimate questions of law is not favored." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

> The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case.

*Id.* It also infringes on the trial judge's "role of adjudicating the law for the benefit of the jury." *Id.* "In no instance can a witness be permitted to define the law of the case." *Id.* at 810.

---

[1] "[A]n expert may refer to the law in expressing his or her opinion," however. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015).

Here, Defendants argue that the Court should exclude portions of Mr. Flood's proffered opinions because they infringe on the Court's duty to define the law of the case and the jury's duty to apply that law to the facts and are thus unhelpful. (Doc. 110 at 4-7.) Specifically, Defendants seek exclusion of any opinions that they acted "unreasonably," in "bad faith," or "in violation of any contractual, common law, or statutory duty." (*Id.* at 1, 8.) Plaintiff counters that expert testimony may "refer to the law" and that "[a]ny testimony Mr. Flood provides regarding legal issues will aid the jury in understanding the facts of this case as to Defendants' conduct even though they are couched in legal terms." (Doc. 115 at 3.)

Plaintiff is correct that expert testimony is not objectionable merely because it refers to legal concepts and Mr. Flood's opinions are not excludable on that basis. For example, Mr. Flood's opinions are not excludable merely because they address the legal concepts of "damages" and "causation." (*See* Doc. 110-2 at 3-4.) Nevertheless, Plaintiff fails to refute Defendants' charge that some of Mr. Flood's opinions impermissibly state legal conclusions that he has drawn by applying the law to the facts of the case. (*Id.*; *see* Doc. 115 at 3-4.) And based on his report, it certainly appears that Mr. Flood proposes to opine about the propriety of Defendants' conduct in relation not only to insurance industry customs, practices, and standards, but also to Defendants' legal duties as he defines them.

Three analogous cases cited in Defendants' Motion highlight the problematic nature of such opinions. In the first case, *American Automobile Insurance Company v. First Mercury Insurance Company* ("*American Automobile*"), both parties' experts proposed to testify about the parties' legal duties as insurers and whether they breached those duties. *See* 2017 WL 4410780, at *5, *8. However, the court observed that whether an insurer had a legal duty "is a question of law to be determined by the [c]ourt," and "whether an insurer breached that duty is a matter to be

8

determined by the jury upon application of the law to the facts." *Id.* at *8. The court therefore held that the parties' experts could not testify as to whether a party owed a duty under statutory or common law, whether it breached that duty, and whether its actions were in good or bad faith or reasonable or unreasonable. *Id.* Instead, the court held that the experts could testify "as to facts relevant to good faith, such as industry standards for claims handling, typical practices and procedures, and the facts behind the parties' claims handling in [the] case" and the parties' "actions vis á vis … statutory requirements and the methods used by insurers to comply with the statute." *Id.*

In the second case, *Hansen Construction Inc.*, a proffered expert's report read like "a legal brief," with "numerous pronouncements regarding the law that [the expert] believes applies to this case" and "legal conclusions drawn by applying law to facts." 2019 WL 2602510, at *4. For example, the expert opined that the defendant's "claim-related conduct was unreasonable." *Id.* at *3. "[N]oting the inadmissibility of such opinions," the court "declined to parse out the admissible portions of [the expert's] proposed testimony from the inadmissible portions," and precluded him from testifying at trial. *Id.* at *4 (brackets and quotation marks omitted). The court also excluded two other experts' proffered testimony for similar reasons. *Id.* at *5.

And finally, in the third case, *Smith v. Liberty Mutual Fire Insurance Co.*, the court discussed and delineated the proper scope of the parties' insurance experts' testimony. Civ. No. 18-739, 2020 WL 6162986, at *3-*4 (D.N.M. Oct. 21, 2020). Specifically, having reviewed the principles discussed in *Specht* and *American Automobile*, the court held that the experts could "testify to claims handling standards and to the facts of how [the defendant insurer] handled [the plaintiff's] claims." *Id.* at *3-*4. But the court prohibited them from opining that the defendant's

conduct was "reasonable," "unreasonable," or "in good faith or bad faith," or that the defendant did or did not violate a statute. *Id.*

Some of Mr. Flood's proffered opinions are materially indistinguishable from those the courts excluded in the above cases. For example, Mr. Flood proposes to opine that "[i]nsurers handling first-party claims owe a heightened standard of fairness and transparency" and have a "fiduciary-like responsibility … when handling UM claims for their policyholders." (Doc. 110-2 at 3 ¶¶ 4-5.) These opinions appear to concern Defendants' legal duties rather than industry standards. But whether a legal duty exists is a question for the Court to decide, and it would not be helpful to the jury for Mr. Flood to opine on this topic. *See Am. Auto. Ins. Co.*, 2017 WL 4410780, at *8.

In addition, Mr. Flood frequently appears to draw legal conclusions by directly or indirectly characterizing Defendants' conduct as unreasonable or in bad faith, where unreasonableness and bad faith are elements of claims asserted in Plaintiff's Complaint. (*See, e.g.,* Doc. 3-2 at 6-8.) In Paragraph 1, he opines that "[no] reasonable insurer would value this UM claim at $2,500." (Doc. 110-2 at 3 ¶ 1.) In Paragraph 2, he states that "[r]easonable insurers distinguish aggravation of a condition from unrelated health issues." (*Id.* at 3 ¶ 2.) In Paragraph 3, Mr. Flood opines that certain evidence "support[s] at least a good faith discussion of full policy limits," thus implying that Defendants did not act in "good faith" because they did not engage in such a discussion.[2] (*Id.* at 3 ¶ 3.) In Paragraph 7, Mr. Flood concludes that "any reasonable insurer would recognize [Plaintiff's] objective evidence as proof of new trauma." (*Id.* at 3 ¶ 7.) And he opines in Paragraph 8 that Defendants' dismissal of Plaintiff's claim was "inconsistent with how a reasonable insurer is expected to evaluate causation and damages." (*Id.*

---

[2] In Paragraph 3, Mr. Flood also characterizes certain evidence as "uncontroverted," which appears to further impinge on the jury's fact-finding role. (Doc. 110-2 at 3 ¶ 3.)

at 4 ¶ 8.) Finally, in Paragraph 9, he states that "[r]easonable insurers are expected to differentiate between pre-existing conditions and post-accident aggravations." (*Id.* at 4 ¶ 9.)

In the above opinions, Mr. Flood appears to define the scope of Defendants' legal duties, including the duties to act reasonably and in good faith, and to apply the law regarding these duties to the facts of the case, impinging on the Court's and the jury's performance of these functions. Such testimony is not helpful, and it is also more unfairly prejudicial than probative. The Court will therefore exclude it under Rules 403 and 702.

### III. Conclusion

In his report, Mr. Flood does more than opine about insurance industry customs, practices, and standards and whether Defendants' handling of Plaintiff's claim conformed to such norms. Rather, he frequently appears to define the law of the case and apply that law to the facts to draw ultimate legal conclusions about Defendants' conduct. However, such testimony would usurp the Court's and the jury's roles and would be unhelpful and more unfairly prejudicial than probative. Mr. Flood is therefore precluded at trial from testifying about: (a) the existence or scope of any contractual,[3] common law, fiduciary, or statutory duty that Defendants owed to Plaintiff, or that an insurer in Defendants' position owes to an insured in Plaintiff's position; (b) whether Defendants breached any such duty; (c) whether Defendants acted reasonably or unreasonably; and, (d) whether Defendants acted in good or bad faith.

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

[3] "Absent an ambiguity in the contract, interpretation of a contract is a matter of law to be conducted by the Court." *Am. Auto. Ins. Co.*, 2017 WL 4410780, at *6.

11