**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LORENZO GARCIA,

    Plaintiff,

v.                                             **No.  1:24-cv-1286 KK/KRS**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and RANDY CARNEY,

    Defendants.

## ORDER

THIS MATTER is before the Court following its decision granting Plaintiff's First and Second Motions to Compel, and order for costs. *See* (Doc. 73). Plaintiff has submitted his Petition For Attorneys' Fees And Costs Pursuant To Fed. R. Civ. P. 37(a)(5) ("Fee Petition"), and the matter is fully briefed. (Docs. 84, 98, 100). Having reviewed the parties' submissions and relevant case law, the Fee Petition is now granted in part, with the Court ordering Defendant State Farm to pay Plaintiff Lorenzo Garcia **$13,970.71**.

### BACKGROUND

On October 21, 2025, the Court entered a Memorandum Opinion and Order (Doc. 73), which granted in substantial part Plaintiff's First Motion to Compel (Doc. 30) and Plaintiff's Second Motion To Compel (Doc. 33), finding that "most of State Farm's nondisclosures, responses, or objections were not substantially justified." (Doc. 73 at 53). The Court also found that State Farm's written discovery responses and withholding of discoverable material justified an award to Plaintiff under Federal Rule of Civil Procedure 37(a)(5) of reasonable expenses, including attorneys' fees, and that no other circumstances made such an award unjust. (*Id.* at 52-53). Thus, the Court directed Plaintiff to submit his counsel's time records and a supporting

affidavit so that the Court could "determine the appropriate amount of fees and costs to be awarded." (*Id*. at 54).

Plaintiff filed his Fee Petition on November 3, 2025, along with an affidavit of his attorney, Damon J. Hudson ("Attorney Affidavit") and Mr. Hudson's billing records related to the two Motions to Compel. (Docs. 84-1, 84-2). The attachments show that, between April and October 2025, Mr. Hudson spent 32.6 hours performing tasks related to Plaintiff's First and Second Motions to Compel, and an additional 4.5 hours preparing and filing the Fee Petition. The total attorney hours spent was 37.1. (Doc. 84-1 ¶ 3). Mr. Hudson states in the Attorney Affidavit that his customary hourly rate is $425 per hour, which he attests is "consistent with prevailing rates for complex civil litigators in Santa Fe and Albuquerque and approved in multiple fee awards." (*Id.* ¶ 4). According to the Fee Petition, the lodestar amount for time reasonably expended in bringing the two Motions to Compel and the Fee Petition is $15,767.50. The Fee Petition states that Mr. Hudson voluntarily reduced this amount by10% "to reflect billing judgment," and then applied the 7.625 % New Mexico Gross Receipts Tax, to reach a total fee amount of $15,271.36. (Doc. 84 at 1). Mr. Hudson represents in the Attorney Affidavit that he "exercised billing judgment by omitting internal administrative communications and applying a voluntary 10% reduction to the total lodestar"; that the hours in question "were actually expended and necessary to obtain the Court's discovery order"; and that "[n]o clerical or duplicative time is included." (Doc. 84-1 ¶¶ 5, 8).

State Farm objects to the Fee Petition, claiming that the normal presumption of reasonableness for fees calculated according to the lodestar method does not arise here because Plaintiff failed to provide competent evidence to support either the reasonableness of his attorney's hourly rate or the number of billed hours. (Doc. 98 at 2). According to State Farm, the evidence

supports at most 15.75 billable attorney hours, at a rate of no more than $225 per hour, for a total fee award of no more than $3,543.75. (*Id.* at 8).

## LEGAL STANDARD

Reasonable attorneys' fees under Fed. R. Civ. P. 37(a)(5) are typically calculated using the lodestar methodology. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543-44 (2010)). The party requesting attorneys' fees bears the burden of proving the two components used to calculate the fee award: (1) the appropriate hourly rate and (2) the amount of hours spent on the case. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000). The party seeking fees "should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 434. Once the court makes a determination as to the reasonableness of the claimed hours worked and rate, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson*, 160 F.3d at 1281. From there, the court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation. *See Farrar v. Hobby*, 506 U.S. 103, 120-22 (1992); *see also General Protecht Grp., Inc. v. Leviton Mfg. Co.*, 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015) ("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."). There is no precise rule or formula for a court's adjustment of the lodestar; rather, courts have discretion in making this

equitable judgment. *Hensley*, 461 U.S. at 436-37. In awarding fees, the court should "provide a concise but clear explanation of its reasons for [a] fee award." *Hensley*, 461 U.S. at 438.

**ANALYSIS**

**A.    PLAINTIFF'S COUNSEL'S HOURLY BILLING RATE**

State Farm first objects to the billing rate Plaintiff uses to calculate the fee award, arguing that Mr. Hudson's $425 billing rate is not supported by evidence and is unreasonable.

Courts are vested with wide discretion to determine whether the rate charged by an attorney is excessive. *See e.g. Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (in § 1983 case, "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area."). To determine the appropriate hourly rate, the court considers (i) the attorney's level of experience; and (ii) the work the attorney performed. *XTO Energy, Inc. v. ATD, LLC*, No. 14-cv-1021 JB/SCY, 2016 WL 5376322, at *10 (D.N.M. Aug. 22, 2016); *see Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983) ("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), *overruled in part on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). The court also looks to "the prevailing market rate in the relevant community." *New Mexico v. Valley Meat Co., LLC*, No. CIV 14–1100 JB/KBM, 2015 WL 9703255, at *23 (D.N.M. Dec. 14, 2015) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006)). The prevailing market rate generally refers to the rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff seeks an hourly rate of $425. State Farm argues that $425 per hour is unreasonable because Mr. Hudson is only a "6-year practicing lawyer." (Doc. 98 at 2). According to State Farm,

4

$225 per hour is a more appropriate market rate for an attorney with the same level of experience as Mr. Hudson. Plaintiff counters that Mr. Hudson is in his seventh year of practice (Doc. 84-1 at 1), and that his position as the founder and principal of his own law firm, as well as the nature of his practice and past experience handling complex federal litigation, justifies a higher billing rate than his relative youth might otherwise suggest. (Doc. 84 at 3).

In support of its argument that $225 per hour is a more appropriate billing rate for Mr. Hudson, State Farm cites *Payne v. TriState Careflight*, 278 F. Supp. 3d 1276 (D.N.M. 2017), a wage and hour case that awarded an hourly rate of $350 to an attorney who had been practicing for 34 years. *Id.* at 1298; *see* (Doc. 98 at 5). According to State Farm, "[a]rguably, the class action litigation in *Payne* is more complex than this personal injury litigation," and "[n]one of Plaintiff's counsel's bona fides equal those of [the attorney in *Payne*] in which the court awarded far less to [the *Payne* attorney] than Plaintiff's counsel here seeks." (Doc. 98 at 5). The Court disagrees with State Farm's assessment that a wage and hour case is more complex than a case such as the present one involving claims of bad faith insurance practices, particularly insofar as the discovery issues raised by Plaintiff's First and Second Motions to Compel are concerned. Moreover, the *Payne* decision was based on prevailing market rates for class action litigators, not the number of years of experience of the attorneys involved.[1] And the average market rate in 2017 does not inform the Court of what the average market rate is almost ten years later, in 2026. Taking into account general inflation rates over the past ten years, a billing rate of $350 in 2017 would be the equivalent of $471.50 in today's dollars.[2] Law firms, however, historically have increased billing rates by

---

[1] In fact, State Farm had to look outside the court's opinion to information about the attorney available on the internet to determine how many years of experience the attorney in question had. *See* (Doc. 98 at 5).

[2] *See https://www.in2013dollars.com/us/inflation/2017?amount=350* (last visited Apr. 27, 2026).

amounts greater than the general rate of inflation, sometimes by as much as "twice (or more) the rate of inflation."[3] In short, *Payne* does not support State Farm's argument that Plaintiff's requested $425 per hour rate is unreasonable.

State Farm also cites two more recent cases—*Pruess v. Presbyterian Health Plan, Inc.*, No. CIV 19-629 DHU/JFR, 2022 WL 796370 (D.N.M. Mar. 16, 2022), and *Herrera v. Gadsden Independent School District*, No. 2:24-CV-127 GBW/GJF, 2025 WL 2858948, at *2 (D.N.M. Oct. 8, 2025). But in *Pruess*, the court awarded $425 per hour—the same amount Plaintiff seeks here— for work on a motion to compel performed four years ago. 2022 WL 796370, at *11. And the *Herrera* court merely approved the actual billing rate of the attorney in that case, which was only $230.00 per hour. Thus, neither case supports State Farm's argument that Plaintif's counsel's rate of $425 per hour exceeds today's prevailing market rates.

State Farm's suggested rate of $225 per hour is decidedly on the low side, justified only if one were to focus on case law from five or more years ago without adjusting the amounts stated in those cases to reflect 2025-2026 rates.[4] State Farm also appears to derive the $225 per hour

---

[3] *See https://www.thomsonreuters.com/en-us/posts/legal/law-firm-rates-report-2026/* (last visited Apr. 24, 2026).

[4] *See, e.g., Hall v. SelectQuote Ins. Servs.*, No. 20cv450 MV/GJF, 2021 WL 214693, at *4 (D.N.M. Jan 21, 2021) (finding that "a reasonable hourly rate" in the motion to compel context was "$275 per hour"); *Sant v. Liberty Mut. Ins. Co.*, No. 21cv251-WJ/SMV, 2021 WL 4444812, at *2 (D.N.M. Sept. 28, 2021) (discussing "several cases [that] contextualize the appropriate hourly rate in the District of New Mexico," such as cases holding that (1) "$250 and $175 hourly rates were well within the norm in the Albuquerque area, especially for attorneys with 20-plus years of experience"; and (2) an hourly rate for an attorney with "superb trial advocacy skills and [a] status as one of New Mexico's preeminent trial lawyers" could not exceed $350 (citations omitted); *Munoz v. FCA US LLC,* No. CV 17-881 WJ/SCY, 2020 WL 6126454, at *3 (D.N.M. Feb. 28, 2020) (finding that $250 an hour was a reasonable rate for an attorney hired to handle discovery in Albuquerque, New Mexico); *Pierce v. Alt. Specialty Ins. Co.*, No. 16cv829-JAP/KBM, 2017 WL 3996216, at *3 (D.N.M. Sept. 8, 2017) (holding that an attorney who was included in the "Best Lawyers in America" publication "along with dozens of other New Mexico attorneys," had not "demonstrate[ed] that a rate of $500 per hour [was] the prevailing rate in New Mexico"—thus reducing the rate to "$275 per hour, which is a rate this market commands for similar services by lawyers of comparable skill" (citations and quotations omitted)); *XTO Energy, Inc.*, 2016 WL 1730171, at *32–33 (observing that "[t]he Court has approved rates of $300.00 per hour and other judges in New Mexico have found rates of $350.00 per hour reasonable, but most rates in New Mexico are lower"—and, after reviewing numerous cases, observing that "a $400 rate would be close to the top, if not the top of the rates that the court has approved or seen in New Mexico, and that rate has not been for insurance work").

6

billing rate primarily by comparing the number of years Plaintiff's counsel has been practicing law compared to the attorneys discussed in those cases. But the Court agrees with Plaintiff that his counsel's graduation year from law school is not the only factor to consider in determining whether counsel's requested hourly rate is reasonable. A reasonable hourly rate also should take into account the quality of an attorney's performance. *See, e.g., O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1084 (D.N.M. 2018) (stating that the attorney in question "made himself an expert in the area of law at issue," and that his "experience … is a better indicator of a reasonable hourly fee for his services than 'mere number of years since admission to the bar'" (quoting *Chavez v. Stomp*, Civ. No. 10-205 JCH/ACT, 2014 WL 12796784, at *3 (D.N.M. Feb. 27, 2014)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553, 554-55 (2010) (noting that, "if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar)," an *enhancement* to the loadstar might be called for to account for the quality of the attorney's performance). Mr. Hudson's fee should not be limited by the fact that he graduated from law school less than a decade ago if a higher fee is otherwise justified. The problem is that it is difficult for the Court to evaluate whether a higher fee is justified because of the limited evidence submitted by Plaintiff on the issue.

As for his background and experience, Mr. Hudson states in his Attorney Affidavit only that he has been practicing law since 2019, with a focus on personal injury, insurance bad faith, and civil litigation, and that he is the founder and principal attorney of Hudson Injury Law in Albuquerque, New Mexico. (Doc. 84-1 ¶ 1). Plaintiff's reply brief provides slightly more information, stating that Mr. Hudson has "manag[ed] complex federal litigation … bearing responsibility for case strategy, client representation, and litigation risk—responsibilities typically associated with partner-level rates regardless of years at bar." (Doc. 100 at 4). But these are

unsworn statements in an attorney's brief, which do not constitute evidence. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (citing *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980)); *see also Vigil v. S. Valley Acad.,* No. CV 05-1142 WJ/ACT, 2006 WL 8443901, at *6 (D.N.M. Oct. 4, 2006) ("argument of counsel is not evidence"). And beyond that, even if the statements had been made in the affidavit, an assertion of extensive experience managing complex federal litigation—standing alone—is conclusory. *See, e.g., M.G. v. Armijo,* No. 1:22-CV0325 SMD/DLM, 2025 WL 2495037, at *6 (D.N.M. Aug. 29, 2025) (finding that the evidence the plaintiffs initially provided to support the requested hourly rate "was scant" where it consisted only of the attorneys' affidavits opining that "the requested rate [was] reasonable given their experience and expertise," with careers in disability discrimination law that spanned "more than two decades each").

Nevertheless, the Court concludes, based on Mr. Hudson's role as principal of his own firm who bears full responsibility for client matters and litigation risks, as well as the fact that Mr. Hudson has demonstrated his experience and capabilities through his work in this matter, that a billing rate equivalent to that of an experienced partner at a larger-sized New Mexico law firm is justified. But what is the prevailing rate in the area for an experienced partner? Mr. Hudson opines that $425 per hour is "consistent with prevailing rates for complex civil litigators" in the local market. (Doc. 84-1 ¶ 4). That assertion, again, is conclusory. "Evidence of the local market rate is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees." *Castillo v. Hille*, No. 1:21-CV-00258-DHU-KK, 2024 WL 3292542, at *4 (D.N.M. July 3, 2024) (citing *Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2021 WL 371575 at *2 (D.N.M. Feb. 3, 2021) (citation and quotation omitted)); *see also Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.,* 157 F.3d 1243, 1257 (10th Cir. 1998) (holding that the

district court should have considered affidavits submitted by defendants regarding rates for civil rights attorneys of similar skill and experience in the locality, "and granted rates in accordance with any of them or arrived at a compromise among them"). No attorney affidavits, other than Mr. Hudson's own affidavit, have been submitted here. "It may well be that the proposed rate[] [is] justified; the problem is that [Plaintiff] ha[s] not done the spadework—affidavits of other lawyers or evidence of other cases—to nudge towards an upward adjust[ment][.]" *Payne*, 278 F. Supp. 3d at 1298.

It is well established that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 895 n.11; *see also Lippoldt*, 468 F.3d at 1225 (similar). Still, if the court lacks adequate evidence to determine the prevailing market rate, it may, "in its discretion, use other factors, including its own knowledge, to establish the rate." *Case*, 157 F.3d at 1257 (citing *Lucero*, 815 F.2d at 1385). In addition to the Attorney Affidavit, the Fee Petition points to the 2025 Fitzpatrick Matrix to justify the requested $425 billing rate. (Doc. 84 at 3). The Fitzpatrick Matrix "outlines prevailing market rates for complex federal litigation in the District of Columbia based on years of experience." *Nexstar Media, Inc. v. Walters*, No. CIV-24-980-J, 2025 WL 3228913, at *9 (W.D. Okla. June 27, 2025) (emphasis added). It identifies $657 per hour as the market rate for attorneys with seven years of experience.[5] Plaintiff argues that a discount to $425 (an approximate 35% reduction) appropriately takes into account the difference in market rates between the District of Columbia and Albuquerque, New Mexico. But he offers no evidence to support that assertion. To fill this gap in the evidence, the Court takes

---

[5] *See https://www.justice.gov/usao-dc/media/1395096/dl?inline* (last visited Apr. 24, 2026).

judicial notice[6] of the federal Office of Personnel Management Locality Pay Map, which indicates an 18.33% locality pay adjustment over base salary for federal employees living in Albuquerque, New Mexico, versus a 33.94% locality pay adjustment for federal employees living in Washington, D.C.[7] The difference between the two geographic locations in locality pay is 15.61%. Since that difference is significantly less than the 35% reduction applied by Plaintiff to the rate suggested by the Fitzpatrick Matrix, the Court finds the Fitzpatrick Matrix, adjusted for locality differences, does provide some evidentiary support for the requested $425 per hour rate.

On the other hand, a report specific to New Mexico suggests that attempting to adjust the Fitzpatrick Matrix to align with local rates might not yield an accurate result. The *Payne* court cited a 2016 study of mean/median hourly rates for determining a reasonable hourly rate for attorneys in New Mexico.[8] That study indicates that the mean/median hourly rate in 2016 for New Mexico attorneys working in the field of "Civil Litigation" was $241/$249. General inflation rates would justify an amount for 2026 in the range of only $331.58 to $342.59.[9] Furthermore, recent case law indicates that Plaintiff's requested $425 per hour is on the high side for prevailing rates over the past three years for commercial litigation in Albuquerque, New Mexico.[10]

---

[6] *See* FED. R. EVID. 201(c)(1).

[7] *See https://www.federalpay.org/gs/locality* (last visited Apr. 24, 2026).

[8] *See Payne*, 278 F. Supp. 3d at 1298 (citing THE ECONOMICS OF LAW PRACTICE IN NEW MEXICO, May 2017, Research & Polling Inc., at 49 (available at *https://www.sbnm.org/Portals/NMBAR/PubRes/Reports/2017LawyerCompensation Survey.pdf?ver=kshjH2muXAa8IjwFPWgW9A%3d%3d* (last visited Jan. 8, 2026)).

[9] *See https://www.usinflationcalculator.com* (last visited Apr. 24, 2026).

[10] *See, e.g., Century Bank v. Art Fin. Funding (IX), LLC,* No. 2:23-CV-00445-DHU-JHR, 2026 WL 280437, at *2 (D.N.M. Feb. 3, 2026) ("this Court has rarely awarded more than $350 per hour in commercial cases"); *Imming v. De La Vega,* Civ. No. 23-378 GJF/DLM, 2025 WL 3688127, at *7 (D.N.M. Dec. 19, 2025) (where a civil litigator with more than three decades of experience requested $400 per hour and was awarded $325 per hour, a twenty-five year attorney requested and was awarded $295 per hour, while a ten-year attorney requested $250 per hour and was awarded $200 per hour); *M.G.*, 2025 WL 2495037, at *5 (stating that an hourly rate of $400 "gives the Court pause because it significantly exceeds the fee customarily charged in southern New Mexico for similar legal services, and finding that a rate of $325 per hour was reasonable for attorneys of like skill, experience, and reputation); *Barker v. GR Inv. Grp.*

In sum, on the one hand, a rate on the higher side is supported by the Fitzpatrick Matrix adjusted for geographic locality; the Court's own knowledge of the expertise required for, and risk involved in, litigating bad faith insurance claims; and the difficult nature of this particular discovery dispute for which Mr. Hudson achieved an excellent result for his client. On the other hand, a rate on the lower side is supported by the 2016 New Mexico report adjusted for general rates of inflation; the fact that attorneys' fees are generally lower in New Mexico than in surrounding areas; case law in the last three years; and the Court's own knowledge of the market. Balancing all factors, the Court concludes that a fair and reasonable rate to use in determining the loadstar amount is slightly less than the $425 requested amount, and awards Plaintiff's counsel $400 per hour instead.[11]

## B.    NUMBER OF BILLED HOURS

State Farm also challenges the number of hours for which Plaintiff seeks to recover fees. According to State Farm, Plaintiff's counsel's billing summary includes fees associated with tasks that do not relate to the two Motions to Compel, and therefore are not recoverable.

Rule 37(a)(5) provides that if a motion to compel is granted, the prevailing party is entitled to recover his reasonable attorneys' fees "incurred in making the motion." FED. R. CIV. P. 37(a)(5)(A). State Farm reads this language as limiting the recovery of fees to only the tasks of

---

*LLC,* No. 1:23-CV-0332 SCY/DLM, 2024 WL 5381499, at *4 (D.N.M. July 10, 2024) (finding that $300 per hour was a reasonable hourly rate for a discovery dispute in a TCP case); *Escano v. Innovative Fin. Ptners., LLC,* No. 23-277 MLG/GJF, 2024 WL 243558, at *17 (D.N.M. Jan. 23, 2024) (recommending that hourly rates at an Albuquerque firm be set at $325 for partners and $225 for associates), *report and recommendation adopted,* 2024 WL 943958 (D.N.M. Mar. 5, 2024); *MVT Servs., LLC v. Great W. Cas. Co.,* No. CV 18-1128 GJF/GBW, 2023 WL 2743531, at *9 (D.N.M. Mar. 31, 2023) (rejecting requested hourly rate of $461.14, and finding an hourly rate of $325 to be "decidedly on the higher side of the prevailing market rate in [the southern New Mexico] locality"), *aff'd,* 118 F.4th 1274 (10th Cir. 2024).

[11] *Compare Rader v. Bisignano*, No. CV 24-1227 SCY, 2026 WL 1102755, at *2 (D.N.M. Apr. 23, 2026) (approving attorney fee award in social security case that calculated to a rate of $443.21 per hour); *Grant v. Bisignano*, No. 1:24-CV-00010-JMR, 2026 WL 74167, at *3 (D.N.M. Jan. 9, 2026) (approving attorney fee award in social security case that calculated to a rate of $600.42 per hour).

11

preparing and filing the motion to compel. *See* (Doc. 98 at 6-7). In the alternative, State Farm cites *Pruess*, 2022 WL 796370, where the defendants argued that the court should "limit the fee award to the reasonable amount of time it would take Plaintiffs to write a motion to compel and reply, without accounting for any time spent in the meet and confer process leading up to the filing of the motion." *Id.* at *3. The *Pruess* court "note[d] a split among decisions over whether meet and confer time is recoverable as expenses awarded pursuant to Rule 37(a)(5)," and ultimately decided "to use a blended approach and reduce the compensable time—in the meet and confer category only—by 50%." *Id.* at *4. State Farm argues that the Tenth Circuit has not allowed the recovery of fees "unrelated to filing amotion to compel," but that if this Court were to nevertheless allow such fees, it should adopt the split approach applied by the *Pruess* court. (Doc. 98 at 7).

As noted in *Pruess*, courts within this circuit have split over whether time attributable to the meet-and-confer process is recoverable under Rule 37(a)(5). *See, e.g., City of Las Cruces v. United States*, No. CV 17-809 JCH/GBW, 2021 WL 5926022, at *11 (D.N.M. Dec. 15, 2021) (citing cases), *objections sustained in part on other grounds, and overruled in part sub nom. City of Las Cruces v. Lofts at Alameda, LLC*, No. CV 17-809 JCH/GBW, 2022 WL 3355830 (D.N.M. Aug. 15, 2022); *compare Beaumont v. Branch*, No. 2:23-CV-03546-DCN, 2024 WL 3742755, at *11 (D.S.C. Aug. 9, 2024) (stating that there are numerous cases outside of the Fourth Circuit in which courts have excluded generalized discovery costs, costs incurred for a meet and confer, and preparation of letters in advance of meet and confers from their award of attorney's fees, and citing cases). The Tenth Circuit stated in *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673 (10th Cir. 2012), that Rule 37(a)(5) includes "reasonable expenses incurred ... *in filing or opposing a discovery motion.*" *Id.* at 678 (emphasis added). As Judge Wormuth pointed out, "[t]he most natural reading of th[e] phrase ["in filing or opposing a discovery motion"] excludes

reimbursement for meeting and conferring before drafting a discovery motion." *City of Las Cruces*, 2021 WL 5926022, at \*11. But the Tenth Circuit's statement was made in the context of resolving a different interpretative question regarding fees under Rule 37(a)(5).[12] Whether the Rule limits recoverable fees to the drafting and filing of the motion to compel was not at issue in *Centennial Archaelogy*. "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (Marshall, C.J.); *see also Illinois v. Lidster*, 540 U.S. 419, 424 (2004) (stating that general language in judicial opinions must be read in context and not as "referring to quite different circumstances that the Court was not then considering").

Ultimately, the Court does not need to resolve the interpretative issue raised by State Farm at this time, because it finds that, even under a more restrictive reading of the Rule, the attorney time entries at issue all fall under the category of time spent in filing the Motions to Compel.[13] The reason the Court reaches this conclusion is that, unlike other cases in which the party opposing the motion to compel responded to discovery requests and engaged in pre-filing negotiations in good faith, State Farm's responses to Plaintiff's discovery requests were perfunctory, denying whole swaths of relevant discovery by asserting conclusory objections that appear to have been copied

---

[12] At issue in *Centennial Archaeology, Inc.* was whether a party could recover attorneys' fees under Rule 37 when the attorney was working on a contingency fee basis and the party in question therefore did not actually "incur" any attorneys' fees. 688 F.3d at 678-79. In other words, the statutory language interpreted by the Tenth Circuit in that case was the word "incurred," whereas the issue here is how to interpret the statutory language "in making the motion."

[13] If the Court were to resolve that issue, however, taking either the approach of disallowing meet-and-confer time altogether or adopting the *Pruett* split approach instead, the Court does not think State Farm has appropriately categorized Plaintiff's counsel's billing entries in every instance. For example, the Court rejects State Farm's argument that time spent by Plaintiff's counsel reviewing State Farm's responses to the two Motions to Compel should be either disallowed or discounted in half because it was not time "spent briefing the motions to compel." The work in question was necessary to preparation of a reply brief, and therefore would fall under the category of reasonable expenses incurred in filing a discovery motion.

from other litigation in which State Farm has been involved without regard to the issues actually raised by the pleadings in *this* case, to which State Farm largely turned a blind eye.[14] Essentially, State Farm sought to limit the case to Plaintiff's breach of contract claim by simply refusing discovery on Plaintiff's bad faith claims, when the proper path to avoiding discovery on Plaintiff's bad faith claims would have been to either seek and obtain dismissal of those claims as a matter of law prior to discovery, or seek to bifurcate and stay discovery on those claims until after Plaintiff's breach of contract claim was resolved. State Farm's response to Plaintiff's discovery requests relating to his bad faith claims was not in good faith, and therefore Plaintiff is entitled to be compensated for all of his counsel's work related to obtaining an order compelling the discovery in question.

In general, Plaintiff's counsel's billing records provide minimal description, and in that sense are somewhat inadequate to convey the exact work counsel performed so that the Court can evaluate whether the work was justified and attributable to State Farm's refusal to provide reasonable discovery. But the additional explanation for each billing entry in Plaintiff's reply brief (Doc. 100 at 4-6), although not necessarily essential, is helpful to the Court's decision upholding those time entries. The Court also takes into account that Plaintiff applied a voluntary reduction of 10% to the total loadstar fee award, likely in the hope that doing so would conserve future resources

---

[14] *See, e.g., City of Las Cruces,* 2021 WL 5926022, at *11 ("*Barring bad faith* by the losing party …, this Court … finds that expenses arising from Plaintiffs' attorneys meeting and conferring with [opposing counsel] —which preceded their drafting of the Motion to Compel and for Sanctions—are not expenses incurred in the making of that Motion[.]" (emphasis added)); *cf. Pruess,* 2022 WL 796370, at *4 ("[T]he Court is mindful that a certain amount of meeting and conferring would not have occurred but for the discovery dispute that ultimately resulted in the filing of a motion to compel, and the Court has a difficult time completely discounting all of that time, simply because it predated the filing of the motion."); *see generally Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 110 (2017) ("The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection," so "a district court may take into account its overall sense of a suit [and] decide ... that all (or a set percentage) of a particular category of expenses ... were incurred solely because of a litigant's bad-faith conduct." (internal quotation marks and brackets omitted)).

14

by providing a disincentive for State Farm to nitpick the time entries. According to the Court's own calculations, State Farm is better off accepting the 10% voluntary reduction than standing on its objections to the time entries, which, with one exception, the Court will overrule while applying Plaintiff's voluntary 10% reduction. The one exception is the 1.3 hours Plaintiff's counsel billed for reviewing the Court's Memorandum Opinion and Order granting the two Motions to Compel. The Court finds that work was not performed as part of counsel's efforts to compel discovery but rather constituted the results of such efforts. Plaintiff argues that "[t]he Court's 54-page Memorandum Opinion contained detailed directions on fee submissions and analysis of the discovery disputes," and that his counsel "was required to review the entire order to comply with the Court's directives—work necessitated entirely by State Farm's discovery violations." (Doc. 100 at 5). The Court views that work, however, as essentially the equivalent of what Plaintiff's counsel would have had to do if State Farm had engaged in negotiations over the discovery requests in good faith, as it should have done.[15]

### C. ATTORNEYS' FEES FOR PREPARING THE FEE PETITION

Plaintiff seeks to recover for an additional 4.5 attorney hours for preparation of the Fee Petition and supporting affidavit. State Farm's only response is to assert that "Plaintiff's counsel cites no legal authority to support a fee award for this effort." (Doc. 98 at 9). In fact, Plaintiff cited *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986), for the proposition that "[c]ourts in this Circuit routinely award 'fees on fees.'" (Doc. 84 at 4); *see Disability Rts. New Mexico v. Lucero,* No. 22-CV-954-WJ-JFR, 2025 WL 623493, at *9–10 (D.N.M. Feb. 25, 2025)

---

[15] Plaintiff impliedly admits that many of his discovery request were initially overbroad, particularly as to time-frame, as shown by the fact that, for a number of requests, even though State Farm failed to engage in negotiations to limit the scope of the request, Plaintiff voluntarily offered to do so by, among other things, reducing time period covered by the request.

(stating that the Tenth Circuit "generally allows recovery of fees for attorneys' work in seeking attorneys' fees" (citing *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986))). "Such requests must still be reasonable." *Disability Rts. New Mexico*, 2025 WL 623493, at *10. State Farm has not made any argument that the requested 4.5 hours for preparation of the Fee Petition is an unreasonable amount of time, and the Court concludes that it is not.

### D.    NEW MEXICO GROSS RECEIPTS TAX

Finally, Plaintiff seeks reimbursement for the 7.625% New Mexico gross receipts tax his counsel will owe on the attorneys' fee award. *See Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.,* 2012-NMCA-091, ¶ 26, 287 P.3d 318, 324. The Court finds that, by failing to address the issue, State Farm concedes that Plaintiff is entitled to recover the amount payable to the State of New Mexico under the gross receipts tax law. *See Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 622 n.5 (D.N.M. 2007) ("Failure to respond to an argument is generally deemed an acquiescence.").

### CONCLUSION

For the reasons set forth above, Plaintiff's Fee Petition (Doc. 84) is **GRANTED IN PART** as follows: Plaintiff is awarded a total of **35.8 hours** (32.6 hours - 1.3 hours + 4.5 hours) at a rate of **$400** per hour, for a loadstar amount of $14,320.00. The Court will apply Plaintiff's counsel's voluntary 10% reduction to reflect billing judgment, for a total fee award of $12,888.00, and then add an additional $982.71 for gross receipts tax ($12,888.00 x 0.07625). The **TOTAL AWARD** comes to **$13,970.71**. State Farm is **ORDERED** to pay Plaintiff his award within **thirty (30) days** of entry of this order.

IT IS SO ORDERED this 11th day of May 2026.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE